Joyce **BARR**,
Appellant/Cross–Respondent,

v.

**PLASTIC SURGERY CONSULTANTS, LTD. and Boatmen's National Bank, Personal Representative of the Estate of Dr. Bart Lissner, M.D., Respondent/Cross–Appellant.**

No. 53572.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 15, 1988.

Isaac Ernest Young, Maplewood, William M. Wunderlich, High Ridge, for appellant/cross-respondent.

Roberta Rene Hogan, St. Louis, for respondent/cross-appellant.

DOWD, Presiding Judge.

This is a consolidated appeal from a jury verdict in a suit claiming medical malpractice in favor of plaintiff, Joyce Barr, for $75,000. We deny the points raised in both the appeal and cross-appeal and affirm the judgment of the trial court.

Appellant, Joyce Barr (hereinafter plaintiff), consulted with Dr. Bart Lissner, M.D., now deceased, in reference to a desire for breast reduction surgery in November of 1982. She was concerned about the weight

of her chest creating a strain on her back and also wanting to improve her appearance. Dr. Lissner diagnosed plaintiff as having bilateral mammary-hyperplasia.[1]

Plaintiff was later admitted to the hospital and Dr. Lissner performed breast reduction surgery on December 10, 1982. Following the surgery, plaintiff examined herself and concluded she was flat chested. Dr. Lissner then performed a second surgery injecting implants into plaintiff's breast area.

Plaintiff brought suit for medical malpractice in the St. Louis City Circuit Court against Plastic Surgery Consultants, Limited and Boatmen's National Bank, as personal representative for the estate of Dr. Lissner (hereinafter defendants). The damages plaintiff seeks stem from an aggravation of a pre-existing illness and for disfigurement.

The jury awarded her $75,000 upon which the trial court entered a judgment. Plaintiff now appeals this judgment claiming the improper exclusion of evidence of other suits filed against Dr. Lissner was error and also that the verdict was grossly inadequate in view of the exclusion of this evidence.

Defendants' cross-appeal raises four points. First, that the plaintiff failed to make a submissible case. Second, that the judgment should be reversed and remanded to dismiss since the St. Louis City Circuit Court did not have proper venue. Third, that the trial court erred in permitting plaintiff to introduce certain evidence that is irrelevant and immaterial to any issue submitted to the jury. Finally, that the trial court erred in allowing a future damage instruction be submitted to the jury where there was no evidence of future damage. We deny all points and affirm the judgment of the trial court.

Plaintiff's first point on appeal contends that the trial court erred by excluding evidence of seven other lawsuits against defendants as irrelevant and immaterial. We disagree.

The decision to admit or exclude evidence rests within the broad discretion of the trial court. *Karashin v. Haggard Hauling and Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). Plaintiff's assertion of relevancy is two pronged. First, that such evidence is relevant to the issue of whether Dr. Lissner was incompetent, and second, whether defendant Plastics Surgery Consultants, Limited and/or its directors, officers and employees had actual or constructive notice of any such incompetency.

■ The incompetency claim is premised on whether a cancer illness which inflicted Dr. Lissner had affected his performance as a physician. What plaintiff suggests is that these seven lawsuits that were filed show "that the cancer did have a negative effect on Dr. Lissner's general competence."

Of the seven lawsuits sought to be admitted, only five of them were in reference to surgeries that occurred before plaintiff's. As such, these five would be the only suits that would help determine whether Dr. Lissner was competent at the time of plaintiff's surgery. Of the five, only two resulted in a plaintiff's verdict. Another two were dismissed without prejudice at plaintiff's cost, and the other one resulted in a defendant's verdict. Therefore, any probative value towards the issue of competency is at best slight and the potential for prejudice and confusion for the jury is large. Thus, we fail to find error in the trial court's refusal of allowing said evidence on the issue of Dr. Lissner's competency.

■ Next, plaintiff argues that the seven lawsuits are relevant to the issue of whether Plastic Surgery Consultants, Limited and/or its board, officers and employees had actual or constructive notice of any incompetency. Of the seven lawsuits excluded, only three were filed prior to plaintiff's surgery. For the purposes of notice, these three are the only suits we are concerned with. Of these three, one resulted

---

1. Bilateral mammary-hyperplasia is a condition where the bulk area of both breasts are increased.

in a defendant's verdict and the other two were dismissed without prejudice at plaintiff's cost. Such suits filed are no indication of Dr. Lissner's incompetency, thus would not provide any notice thereof. Irrelevant and immaterial evidence is excluded because its admission has a tendency to draw the jury's attention away from the issues it has been called to resolve. *Hungate v. Hudson*, 353 Mo. 944, 185 S.W.2d 646 (1945). We fail to find error from the exclusion of this evidence. Point denied.

■ Plaintiff's final point on appeal states that the trial court erred by overruling plaintiff's motion for a new trial because the evidence of her damages supported a much larger sum than the $75,000 awarded by the jury and was therefore inadequate and against the greater weight of the evidence.

Appellate review of a trial court's order denying a motion for new trial on the grounds of a verdict's inadequacy is limited to whether the trial court abused its discretion. *Summers v. Fuller*, 729 S.W.2d 32, 33 (Mo.App.1987). Also, this court is limited to consideration of the evidence which supports the trial court's action since the trial court denied the motion. *Summers* at 33.

In a medical malpractice action, the determination of the amount to be awarded for injuries rests with the jury, since it is to assess the credibility of the witnesses in addition to the weight and value of their testimony. *Summers* at 34, 35. Therefore, the trial court has wide discretion in ruling on motion for a new trial since it too had an opportunity to view the witnesses giving their testimony.

Thus, where a verdict is approved by the trial court, "it is conclusive on appeal unless it is so shocking and grossly inadequate as to indicate that the amount of the verdict was due to passion and prejudice." *Long v. Hooker*, 443 S.W.2d 178, 182 (Mo. 1969).

We have reviewed the entire record and conclude that the verdict was not shocking and grossly inadequate, thus no abuse of discretion appears. Point denied.

Now we turn to defendants' cross-appeal. Defendants' first point on cross-appeal contends that plaintiff failed to make a submissible case in that 1) there was no evidence that Dr. Lissner violated the standard of care of the medical profession at large and 2) there was no substantial evidence that Dr. Lissner committed medical malpractice.

■ The defendants' first subcontention is that plaintiff's only expert, Dr. Gutek, offered testimony that is so equivocal and contradictory that there was no evidence that Dr. Lissner violated that standard of care of the medical profession at large as brought out on cross-examination.

In determining whether a submissible case is made, all the evidence must be viewed in the light most favorable to the plaintiff, giving her the benefit of all inferences and disregarding defendants' evidence except insofar as it might be favorable to plaintiff. *Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 183 (Mo.App. 1982). Plaintiff's sole theory of negligence as submitted to the jury was that Dr. Lissner was negligent in performing the breast reduction surgery by removing too much tissue and by failing to inform plaintiff of such possible results. The testimony of plaintiff's expert, Dr. Gutek, was played to the jury on video tape and is as follows in pertinent part on direct exam:

Q. [Dr. Gutek], based on these facts, and based on reasonable medical certainty, do you have an opinion as to whether Bart Lissner, in his December 10, 1982 breast reduction surgery on Joyce Barr, failed to use that degree of skill and learning ordinarily used by plastic surgeons in this circumstance:

A. (By Dr. Gutek) Yes.

Q. (By Mr. Miller) And, what is that opinion, Doctor?

A. The opinion is that Joyce Barr had an over resection of tissue of breast tissue, which resulted in lack of projection to her nipples, or to her breasts following surgery.

Q. Now, my question, Doctor, was: Based on these facts which I ask you to assume, and based on reasonable medical

certainty, do you have an opinion as to whether Bart Lissner in his December 10, 1982 breast reduction surgery on Joyce Barr failed to use that degree of skill and learning ordinarily used by plastic surgeons in this circumstance?

A. Yes.

Q. (By Mr. Miller) And, you said you do have such an opinion?

A. Yes, I do.

.    .    .    .    .

Q. (By Mr. Miller) All right. And, what is your opinion?

A. My opinion is that he failed to use the expertise that is usually taken by a plastic and reconstructive surgeon in doing a reduction mammoplasty.

Q. And, in what aspects?

A. The aspects which, I think, were deficient were the pre-operative informed consent to the patient, and secondly inadequate planning for the surgery, and then over resection the breast tissue.

Q. And, can you state more specifically what you mean by over resection of breast tissue?

A. Taking out too much breast tissue which resulted in breasts that did not have any projection, or resulting in breasts which were flatter than what they should have been.

.    .    .    .    .

Q. (By Mr. Miller) Really, I'm interested in your opinion as to why the communication was deficient and what reasons you have for that?

A. Based on his—Okay. A patient such as Joyce Barr who has loose tissue, very large sagging breasts, needs to be informed pre-operatively that she could not expect to get an excellent result in reduction mammoplasty, and a considerable time would need to be spent with.

Q. (By Mr. Miller) Based on your experience and expertise, Doctor, and what you have learned from the facts that I've given you, and your review of Dr. Lissner's medical records, is it possible to perform this type of surgery on Mrs. Barr and give her some forward projection of the breasts?

A. Yes, it is possible.

Q. (By Mr. Miller) And, why do you say that?

A. From experience.

Q. What, specifically, did Dr. Lissner fail to inform Joyce Barr of in regard to his surgery on December 10th?

A. That she would be flat chested. That she could be flat chested, I should say.

Pertinent parts of cross-examination are as follows:

A. (By Mr. Snodgrass) But, on the other hand, if she was perfectly happy with her breasts, as they came out, you wouldn't have any criticism of Dr. Lissner, would you?

A. I would—That would be an unsatisfactory result for me. But, for the patient, it might be a satisfactory result, and it might be for him.

Q. Okay. Well, you gave an opinion about the standard of care exercised by plastic surgeons under the same or similar circumstances.

A. Yes.

Q. If Joyce Barr was perfectly content with the result, and did not care whether her breasts were of the size that she found them to be after the first surgery, you wouldn't have any criticism then, would you?

A. If she was happy, that's the important part.

Q. And, you wouldn't have rendered the opinion that Dr. Lissner somehow failed to comply with the standard of care of surgeons in this area, would you?

A. Well, we're talking about two different things. We're talking about what she thought, and what I would think is the acceptable result, in my opinion.

.    .    .    .    .

Q. All right. Well, am I correct, then, that what you're saying is Dr. Lissner didn't meet your personal standard?

A. That's correct.

Q. All right. You're not saying that he did not meet the standard of plastic surgeons in Missouri as a whole?

A. I don't know that. I don't know what the standard is of everyone in Missouri.

Q. Okay. Or, let's take in St. Louis. You don't know whether he met the standard of care of plastic surgeons in St. Louis; is that correct?

A. I don't know what the standard of care is in St. Louis.

Q. Okay. Do you know what standard care in Kansas City is?

A. Better than in St. Louis.

Q. Better than in St. Louis?

A. No, I say I know about the standard of care here, because I have, for example, four partners which I can see the standard there.

Q. Okay.

A. I have taken my residency here. I've trained with multiple people. I know that scene.

Q. The standard of care of people in Kansas City, what that boils down to is the standard of care of physicians that you know, and your own personal standard?

A. That's, for the most part, my standard, and the other is what I see at meetings.

Q. So, you have rendered a personal opinion based on information provided you about the result that Dr. Lissner reached?

A. That's correct.

(Objections omitted)

While contradictory testimony of a single witness relied on to prove a particular fact does not constitute substantial evidence and is not probative of that fact absent an explanation, a witness's testimony which is not inherently self-contradictory must be considered as a whole. *Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 185 (Mo.App.1982).

Dr. Gutek's testimony is not inherently self-contradictory in that he was very clear when he was asked the crucial question of whether Dr. Lissner had failed to use ordinary degree of skill and learning of plastic surgeons in this circumstance. He was also clear and unequivocal in explaining how the degree of ordinary skill and learn-

ing were not utilized. The testimony brought out on cross-examination may be viewed as an extension of Dr. Gutek's professional opinion to include a personal one rather than a contradiction of what standard Dr. Gutek viewed Dr. Lissner as breaching. Thus, in viewing this evidence in a light most favorable to plaintiffs, we find this argument without merit.

■ Next, we turn to defendant's final issue on his first point. That issue being whether there was substantial evidence that Dr. Lissner committed medical malpractice in that Dr. Gutek based his opinion on the subjective feelings of plaintiff. We feel that Dr. Gutek's testimony is not so based.

Considering Dr. Gutek's testimony as a whole we find Dr. Gutek's reliance on plaintiff's dissatisfaction with the results of the breast reduction surgery as an element of consideration in coming to his conclusion. This being because if plaintiff had desired a flat chest, she then received her wishes and Dr. Lissner then had performed the surgery properly. But here a flat chest was not a desired result, thus the surgery that Dr. Lissner performed was deficient in that respect.

In any event, Dr. Gutek stated even if plaintiff had been satisfied with the results, he, as a professional, would not think the result was acceptable. While an adverse result does not create a presumption of medical malpractice, the adverse result is a fact which may be considered so long as it does not constitute the complete basis for the expert opinion. *Swope v. Printz*, 468 S.W.2d 34, 39 (Mo.1971). Thus, the trial court did not err in allowing this case to go to the jury. Point denied.

Defendants second point on cross-appeal contends that the St. Louis City Circuit Court did not have proper venue since no defendant was a resident of St. Louis City sufficient to confer venue in that forum. The defendant whose residence was in St. Louis City was Boatmen's National Bank acting as personal representative of the estate of Dr. Lissner.

■ The general rule of law in Missouri is that the venue of actions against an administrator or personal representative lies in the county of the residence regardless of the county of probate. *Whitaker v. Hall,* 358 S.W.2d 845, 847 (Mo. banc 1962). In addition, Boatmen's National Bank being a national bank, may only be sued in a state court in the county where the banks are located, unless waived. *Mercantile Trust Co. Nat. Ass'n Anderson,* 611 S.W.2d 548, 551 (Mo.App.1981). Here, since Boatmen's was located in the City of St. Louis which is where the case was tried, venue was proper.

Defendants argue that since no notice of a claim was filed in the probate court within six months of the first publication of letters, no recovery of a judgment may be satisfied from the assets of an estate. Thus, defendant argues, we must treat Boatmens as a defendant ad litem since that would be the proper procedure in seeking a judgment where the deceased tortfeasor leaves no estate but has liability insurance. § 537.021 RSMo 1986.

■ A defendant ad litem's residence will not control for purposes of venue. *Gannon v. Gaertner,* 592 S.W.2d 214, 216 (Mo.App.1980). In the case at bar, however, Boatmens is not a defendant ad litem, thus *Gannon* is not controlling.

While § 473.360(2) RSMo 1986, does not allow a recovery on a judgment out of the assets administered upon unless notice is filed within six months after the first publication of letters, a judgment may still be procured. *Vanderbeck v. Watkins,* 421 S.W.2d 274, 275 (Mo. banc 1967). Thus, in this situation the status of a personal representative in a lawsuit for an estate does not change and is still sufficient to confer venue. Point denied.

■ Defendants' third point on cross-appeal is that the trial court erred by allowing into evidence the meeting minutes of a meeting held on September 13, 1982 of Plastic Surgery Consultants' Board of Directors. The minutes stated that Dr. Lissner had advised the Board that he was uncertain about his health and wanted to cut back his work hours and to limit his

practice in order to build himself back up. Defendants assert that such evidence is irrelevant and immaterial to any issue submitted to the jury and served only to mislead.

Again, we note that the determination of whether evidence should be admitted or rejected rests within the trial court's broad discretion. *Missouri Commercial Investment Company v. Employers Mutual Casualty Company,* 680 S.W.2d 397, 402 (Mo.App.1984). Plaintiff argues that the evidence is competent and relevant to Count III of plaintiff's petition.

Evidence that is admissible on an issue is not to be excluded because it would be inadmissible on another issue in the lawsuit. *Pettet v. Bieterman,* 718 S.W.2d 188, 191 (Mo.App.1986).

Count III asserts that one of the defendants, Plastic Surgery Consultants, Limited, negligently failed to supervise an incompetent employee. It was not until after all the evidence was presented that the trial court sustained a motion for a directed verdict in favor of defendants as to Count III. Thus, all the evidence pertaining to Count III of the petition was relevant and material at trial as the issue was viable before the closing of the evidence. Point denied.

■ The final issue raised on cross-appeal is whether the trial court erred in allowing a future damages instruction to be submitted to the jury. Defendant argues that because no substantial evidence of future damages was presented, no instruction for future damages should have been allowed.

In reviewing whether there is substantial evidence to support the giving of a particular instruction, the evidence is viewed in the light most favorable to the party tendering the instruction. *Porter v. Bi-State Development Agency,* 710 S.W.2d 435, 437 (Mo.App.1986).

Plaintiff testified that as a result of the breast reduction and subsequent implant surgeries, she felt her breasts were shaped "funny." She stated she could not wear a

bra because it slipped up on her breasts. Plaintiff also testified that while she could "camouflage" her breasts in most social contacts, she could not in intimate situations. From such testimony a jury could reasonably conclude that plaintiff suffers and will continue to suffer emotional and mental distress resulting from her "disfigurement." Such mental anguish entitles her to damages as a jury may see fit for past, present and future damages. *Pandjiris v. Oliver Cadillac Co.*, 339 Mo. 711, 98 S.W.2d 969, 977 (1936). Thus, an instruction on future damages is proper. Point denied.

Judgment is affirmed.

SIMON, J., and SIMEONE, Senior Judge, concur.