STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff,

v.

JIM LYNCH TOYOTA, INC., et al., Defendants,

McDonald's Corporation, Defendant/Appellant,

Ethel B. Herzog, Defendant/Respondent.

No. 58949.

Missouri Court of Appeals, Eastern District, Division Four.

June 9, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 8, 1992.

Application to Transfer Denied Sept. 22, 1992.

Albert A. Michenfelder, Jr., Edward K. Fehlig, St. Louis, for appellant.

Jane E. Adams–Nangle, Susan Nell Rowe, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

McDonald's Corporation appeals from the order apportioning the proceeds of a condemnation award. McDonald's is the lessee of a tract of land owned by Ethel B. Herzog. The tract consists of 44,975 square feet abutting Lindbergh Boulevard. McDonald's has operated a drive-in restau-

rant on the property, under a lease originally executed in 1961. In August, 1988, the Missouri Highway & Transportation Commission instituted proceedings to condemn 11,375 square feet of the property to provide an easement for Interstate 270. The property condemned abutted Lindbergh Boulevard and eliminated direct access from the property to any adjacent public street. McDonald's promptly boarded up the restaurant, bought the adjacent property, and built a new restaurant from which it carried on its business. In November, 1988, the Commissioners filed their report assessing damages for the condemnation of the Herzog property at $766,000. This sum was deposited in the registry of the court on December 23, 1988.

In a series of letters between the parties from November 1988, to January 1989, Mrs. Herzog acknowledged that McDonald's could terminate the lease, but she also noted she would repair or alter the remaining land to restore its previous use, if McDonald's chose to continue the lease. In response, McDonald's made it clear it would not terminate the lease and that it considered the condemnation of the demised property a total taking.

Mrs. Herzog then filed a motion for partial summary judgment contending the condemnation was a partial taking; thus, McDonald's could not claim its leasehold interest in the condemned property. In opposition to this motion, McDonald's filed an affidavit from one of its assistant vice presidents stating the demised property was landlocked because it was inaccessible to any public street; therefore, the condemnation was a total taking because the land could no longer be used as a drive-in restaurant.

In June 1989, the trial court granted Mrs. Herzog's motion, finding that the condemnation was a partial taking which by the lease's provisions barred McDonald's from pursuing a claim for its leasehold interest in the property.

One year later, the parties pursuant to § 523.053 RSMo.1986, claimed an interest in fixtures and equipment on the condemned property and requested the trial court to allocate the condemnation award.

The trial court then heard evidence from both parties as to the nature and value of the fixtures and equipment. The court accepted McDonald's valuations and split them into three categories: fixtures remaining on the premises, building fixtures and fixtures removed from the premises. In the court's final order, it allocated $105,950 to McDonald's for its portion of the fixtures and equipment. Thereafter, the court amended the allocation to McDonald's from $105,950 to $112,450 due to the improper valuation of one fixture. Mrs. Herzog received $66,900 for her portion of the fixtures and equipment.

The drafters of the lease [1] contemplated the possibility of future condemnation proceedings and provided as follows:

23. If the whole of the demised premises shall be taken or condemned by any competent authority for any public use or purpose during the term of this lease, Lessee reserves unto itself the right to prosecute its claim for an award based upon its leasehold interest for such taking, without impairing any rights of Lessor for the taking of or injury to the reversion.

In the event that a part of the demised premises shall be taken or condemned and that (a) the part so taken includes the building on the demised premises or any part thereof or (b) the part so taken shall remove from the premises 10% or more of the front depth of the parking area thereof or (c) the part so taken shall consist of 25% or more of the total parking area or (d) such partial taking shall result in cutting off direct access from the demised premises to any adjacent public street or highway, then and in any such event the Lessee may at any time either prior to or within a period of sixty (60) days after the date when possession

---

1. Because we find no ambiguity in the language of the lease, the dispute between the parties regarding who drafted the lease is irrelevant.

See, *John Deere Co. v. Hensley*, 527 S.W.2d 363, 365 (Mo.banc 1975).

of the premises shall be required by the condemning authority, elect to terminate this lease or, ... the lessor shall, with reasonable promptness, make necessary repairs to and alterations of the improvements on the demised premises for the purpose of restoring the same to an economic architectural unit, susceptible to the same use as that which was in effect immediately prior to such taking, to the extent that may have been necessary by such condemnation.

■ It is well established that specific provisions of a lease setting forth the respective rights of the parties in the event the demised property is condemned are valid and controlling. *State v. St. Charles County Assoc.*, 698 S.W.2d 34, 36 (Mo.App. 1985). In this case, the lease contemplated two possible eventualities, a total taking or a partial taking, and established the respective rights of the parties in either event. The first eventuality, condemnation of "the whole of the demised premises" preserved McDonald's claim to a leasehold interest and authorized recovery from the condemnation award of the difference between the contract rental and the actual market value of the use and occupancy of the land for the remainder of the lease term including renewal options. *Land Clearance for Redevelopment Corp. v. Doernhoefer*, 389 S.W.2d 780, 784 (Mo.1965); *Land Clearance for Redevelopment Authority v. Coen & Co.*, 773 S.W.2d 465, 471 (Mo.App. 1989). Because this right is expressly conditioned upon a taking of "a whole of the demised premises," we find no fault with the trial court's refusal to apply the *Doernhoefer* principle, as incorporated in the first paragraph of the lease provisions, to a taking of 27 percent of the demised premises.

McDonald's argues that the portion of the property taken renders the remainder totally unsuitable for the operation of a drive-in restaurant, the purpose contemplated by the lease, and therefore is tantamount to a taking of the whole. It would have been a simple matter to incorporate such a provision in the lease. However, in contemplation of a possibility of a partial taking which would render the property unsuitable, by reason of eliminating access

to the street, reducing the parking area, or taking part of the building, the lease makes express provisions for the lessee's rights which differ from those provided for in the event of a total taking. If we were to accept McDonald's argument, we would, in effect, be rewriting the lease, an undertaking beyond our power.

The lease contains a provision specifically addressed to what has actually occurred: a partial taking which includes a part of the building, which removes more than ten percent of the front parking area and which cuts off direct access to any adjacent public street. In this circumstance the lease clearly gives McDonald's two options, to terminate the lease or to call upon Mrs. Herzog to restore the premises to an economic architectural unit susceptible of use as a restaurant. McDonald's refused to exercise either of these options. It rejected Mrs. Herzog's offer to make alterations so that the remaining portion of the property could be used as an adjunct to McDonald's newly constructed restaurant on the adjoining lot. McDonald's also rejected Mrs. Herzog's offer to terminate the lease. The adoption of this adamant position was McDonald's choice and it is free to live with the consequences of this choice. It does not, however, alter the clear unequivocal language of the lease. The fact that McDonald's in hindsight is not satisfied with the rights it bargained for in the event of a partial condemnation does not entitle it to the rights conditioned upon a total condemnation.

■ Nor does the fact that the elimination of direct access to adjacent public streets makes the restoration of the property to its former use an impossibility create rights not provided for in the lease. McDonald's invocation of the doctrine of "commercial frustration" does not support such a conclusion. "Commercial frustration" exists when the happening of an event not foreseen by the parties and not caused by or under the control of either party has destroyed or nearly destroyed the value of the performance or the purpose of the contract. *Howard v. Nichol-*

*son,* 556 S.W.2d 477, 481–82 (Mo.App.1977). "Commercial frustration" does not create new or additional rights, it merely excuses the parties from further performance. *Id.* This excuse from further performance is furnished to McDonald's by the option to terminate the lease.

We find no error in the trial court's conclusion that McDonald's was not entitled to assert a leasehold interest in the condemnation award.

McDonald's second point on appeal charges trial court error in the allocation of part of the condemnation award for the loss of fixtures and equipment. The court found certain items to be the property of McDonald's and others to be Mrs. Herzog's. From a total value of fixtures in the amount of $179,350, McDonald's was awarded $112,450. McDonald's claims to be entitled to the entire amount allocated to the value of the fixtures and argues that certain items were improperly identified as building fixtures rather than trade fixtures.

A 1973 amendment to the lease provided that all trade fixtures and equipment installed by McDonald's could be removed by it. This provides the basis for McDonald's claim to the entire amount allocated by the court for fixtures and equipment. However, because the lease amendment expressly applies only to *trade* fixtures, McDonald's argument begs the question. The distinction between removable trade fixtures and irremovable building fixtures was described in *Stockton v. Tester,* 273 S.W.2d 783, 787 (Mo.App.1954), as follows:

> Articles annexed to realty by a tenant for the purpose of carrying on a trade or business are considered as trade fixtures and are ordinarily removable by him. That the fixture is particularly adapted to a particular type of building does not (in itself) make it irremovable. If the article is placed in the building for the sole purpose of enabling the tenant to carry on his business, it is removable; but if the article is so placed as to make the building itself peculiarly adapted and more usable for the type of business, then it is not removable.

Elements for consideration in distinguishing between trade fixtures and building fixtures are 1) the annexation to the realty, 2) the adaption to the use to which the realty is devoted, and 3) the intent that the object become a permanent accession to the land. *Hoffman Management Corp. v. S.L.C. of North America, Inc.,* 800 S.W.2d 755, 759 (Mo.App.1990). As between the original parties to the transaction the intent of the annexor is controlling. *Id.* at 760. This intent, however, is to be determined objectively from acts and conduct and the surrounding facts and circumstances. *Cuivre River Electric Cooperative, Inc. v. Missouri Tax Commission,* 769 S.W.2d 431, 436 (Mo.banc 1989). Since the lease amendment specifically refers to trade fixtures and equipment, it fails to provide adequate evidence that McDonald's intended that each and every item annexed to the building should remain its personal property. In its order the trial court listed thirty-five items and the present value of each. Nine of these items with a total value of $37,850 were listed in a category entitled "building fixtures." Mrs. Herzog was awarded the total amount of these items. They consist of such objects as exhaust fans affixed to the roof of the building, a masonry service counter, door locks and alarms, special wiring and lighting. None of these items is unique to a McDonald's restaurant. Each is such an integral part of the structure as to be permanently annexed to the realty. The evidence amply supports this portion of the trial court's order. The remaining twenty-six items listed in the court's order were allocated to one party or the other. The court was not asked for and did not give any explanation or basis for its determination that certain items should be allocated to McDonald's and others to Mrs. Herzog. It is not our function to substitute our judgment for that of the trial court. Rather, guided by the standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we must affirm the determination of the trial court regarding each item unless there is no evidence to support it.

Mrs. Herzog did not appeal the allocation in the court's order of the items credited to McDonald's. Therefore, we review only the twelve items assigned to Mrs. Herzog and examine the meager record presented to us for evidence supporting the trial court's decision.

Examination of the xerox copies of photographs filed as exhibits reveals that the utility sink, the double and single booth seats, the booth tables and patio tables, the roof light beams and the planter boxes, are integrally affixed to the structure, thus furnishing support for the trial court's finding that these items are building fixtures. The same may not be said regarding certain other items allocated to Mrs. Herzog. For example, the trial court found a built-in interior freezer to be a removable trade fixture belonging to McDonald's but an outside walk-in freezer and a storage shed each resting upon a concrete slab to be building fixtures allocated to Mrs. Herzog. Similarly, an outdoor menu board was assigned to McDonald's while a menu board, a bulletin board, and a saran wrap holder attached to but not a part of interior walls were improperly treated as a building fixtures. The right to remove all signs was reserved to McDonald's in the lease and therefore the allocation of a vehicle clearance sign to Mrs. Herzog was error. Accordingly, we find the trial court erred in allocating to Mrs. Herzog the outside walk-in freezer, value $5,200, the outside metal storage shed, value $1,200, the vehicle clearance sign, value $250, the interior menu board, value $2,200, and the bulletin board, value $600.

The judgment of the trial court is affirmed as modified, and the cause is remanded to the trial court with directions to allocate to McDonald's the sum of $121,-300, or 15.84 percent of the total award of $766,000. Costs assessed against McDonald's.

SMITH, P.J., and SATZ, J., concur.