David L. WEST and Teri West, Plaintiffs–Appellants,

v.

SHELTER MUTUAL INSURANCE COMPANY, Defendant–Respondent.

No. 18142.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 10, 1993.

R. Lynn Myers, Richard D. Crites, Springfield, for plaintiffs-appellants.

June Clark, Traci J. Turner, Carlson & Clark, Springfield, for defendant-respondent.

GARRISON, Judge.

This appeal arises from a suit on a homeowner's insurance policy. In May 1985, Appellants David West and Teri West (the "Wests") purchased a lake home, giving the sellers (the "Barbers") a note and deed of trust. At the same time, the Wests obtained a homeowner's policy on the property from Shelter Mutual Insurance Company ("Shelter") insuring the house for $30,000, the contents for $16,500, and naming the Barbers as "Mortgagees."

On June 14, 1987, while Shelter's policy was in force, the house and contents were totally destroyed by fire. As a result of the Wests' claim under the policy, Shelter purchased the note and deed of trust from the Barbers on October 8, 1987 and obtained an assignment of those instruments. After conducting an examination under oath in October 1988, Shelter denied coverage for the loss on November 8, 1988 and this suit followed.

In response to the Wests' suit on the policy, Shelter alleged that the policy was void from its inception because material facts were concealed or misrepresented on the application for insurance. Shelter also requested an offset against any amounts owing to the Wests to the extent of the payments to the Barbers as loss payee under the policy, and also filed a counterclaim seeking a judgment on the note as well as foreclosure of the deed of trust. The counterclaim was severed prior to trial and the parties stipulated that Shelter would be entitled to a credit of $16,210.78 (the amount paid by Shelter to the Barbers for the note and deed of trust) against any judgment obtained by the Wests.[1] Following a jury verdict for the Wests in the amount of $32,050, the trial court, in its judgment entry, first gave Shelter credit for the $16,210.78. It then calculated interest at the rate of nine percent from November 8, 1988[2] to the date of the verdict only on the net recovery ($15,839.22). The Wests appeal from that judgment.

The Wests raise two issues on this appeal. In the first they complain that the verdict was less than required by the law and the evidence. In the other, they allege error in deducting Shelter's credit before calculating interest on their recovery under the policy.

## POINT I

■ In their first point, the Wests argue that the trial court erred in accepting the verdict and entering judgment for $32,050 because, under the valued policy statutes of Missouri and the evidence presented at trial, the verdict should have been for the full amount of the coverage provided under the policy. They correctly point out that Missouri is a valued policy state whereby an insurance company is not permitted to deny that the insured property was worth, at the time the policy was issued, the full amount for which it was insured. §§ 379.140, 379.145, 379.160.[3]

Their argument assumes that of the $32,050 jury verdict, $30,000 was for the loss of the house and $2,050 for the loss of personal property.[4] This is based on the fact that under the valued policy statutes the measure of damages is the amount for which the property is insured, less depreciation from the date of the policy to the time of loss. As to the real estate (the house) the burden of proving any depreciation is on the insurer. § 379.140. *See Duckworth v. United States Fidelity and Guaranty Co.,* 452 S.W.2d 280, 285 (Mo.App.1970). Since Shelter admits that it introduced no evidence showing depreciation of the insured house, both parties proceed on the theory that the jury verdict must have represented $30,000 for the loss of the house, leaving $2,050 for the loss of personal property.

■ Section 379.160 is a valued policy statute applying to personal property, and

---

1. The counterclaim was dismissed without prejudice after the judgment.

2. No issue is raised concerning the use of this date for the purpose of calculating prejudgment interest on the recovery under the policy.

3. All references to statutes are to RSMo 1986, V.A.M.S.

4. Under the form of verdict, one amount was specified without identifying how much of the award was for loss of the house and how much was for the contents.

the measure of damages for total destruction is the value fixed by the policy less depreciation from that date to the time of the fire. *Duckworth v. United States Fidelity and Guaranty Co.,* 452 S.W.2d at 285. Unlike the rule concerning recovery for total loss of real estate improvements, the burden of proof as to loss of personal property is on the insured (in this case, the Wests). *Id.* In order to recover the full amount of coverage on the personal property, the insured therefore has the burden of proving lack of depreciation from the date of the policy. *Id.* This burden can be satisfied by proof of value at the time of the loss or the extent of depreciation in value from the date of the insurance policy to the time of the loss. *Riccardi v. United States Fidelity & Guaranty Co.,* 434 S.W.2d 737, 741 (Mo.App.1968).

▪ The Wests acknowledge that they had the burden to prove the value of the personal property at the time of the fire. They argue that the only evidence concerning value of the personal property was that which they presented by way of the proof of loss and oral testimony, none of which indicated depreciation had occurred. The proof of loss contained an itemized list of the contents of the house and listed the cost of each item as well as its value at the time of the loss.[5] Mr. West also testified that the only change made to the contents following issuance of the policy in 1985 was the placing of additional items in the home, as well as the purchase of new items to replace older ones. Since the evidence did not indicate any depreciation, the Wests argue that the jury was required to award them the full amount of the personal property coverage.

They cite the *Duckworth* case, *supra,* for the proposition that "[e]vidence of repairs and improvements to personal property after date of the policy and before loss, with no suggestion of any depreciation in value during this time, may sustain a finding that the property was reasonably worth the amount of the insurance at the time of loss." *Duckworth v. United States Fidelity and Guaranty Co.,* 452 S.W.2d at 285. Unlike the instant

case, however, the *Duckworth* case involved a judgment for the insured in the full amount of the coverage on the building contents. We agree with the quoted language from *Duckworth* that such evidence would sustain a finding of no depreciation, but we do not agree with the interpretation urged by the Wests, i.e., that such evidence *requires* that finding.

▪ The jury was not required to believe the evidence of value of the personal property, as of the time of the loss, presented by the Wests. This is true even though that evidence was uncontradicted and unimpeached. *Nichols v. Blake,* 418 S.W.2d 188, 189–190 (Mo.1967); *Greenwood v. Wiseman,* 305 S.W.2d 474, 478 (Mo.1957). As the court said in *Hogsett v. Smith,* 229 S.W.2d 20 (Mo.App.1950):

> ... The jury did not have to find for the plaintiff merely because his testimony was uncontradicted. The general rule is that when either party submits oral testimony to sustain his burden of proof, the other party, though offering no evidence to contradict it, is entitled to have the jury determine the credibility of the witnesses and the weight to be given to their testimony. The court has no right to instruct the jury that it must believe the witnesses. If, in such a case, the jury returns a verdict in favor of the party not having the burden of proof, it is within the exclusive province of the trial court to determine whether or not a new trial should be granted on the ground that the verdict was against the weight of the evidence. This court has no authority to interfere with the trial court's ruling.

*Id.* at 21; *Rutledge v. Baldi,* 392 S.W.2d 244, 246 (Mo.1965). A jury is free to accept or reject all or a part of the party's damage evidence, including expenses. *See Havel v. Diebler,* 836 S.W.2d 501, 504 (Mo.App.1992).

The Wests contend that the policy was renewed on May 19, 1987, less than one month before the fire, and that is the date of the policy's issuance for the purpose of the valued policy statute, § 379.160, rather than

---

**5.** The proof of loss was introduced by the Wests without objection or limitation as to its use. *See Mercer v. Millers' Mut. Fire Ins. Ass'n.,* 249

S.W.2d 402, 404 (Mo.1952); *Riccardi v. United States Fidelity & Guaranty Co.,* 434 S.W.2d at 742.

May 1985 when it was initially issued. Under this theory, Shelter would be prevented from denying that less than one month before the fire, the contents were worth $16,500. The Wests argue that it is unreasonable for the jury to find that the property had lost $14,450 in value in less than one month.

It is true that a renewal of an insurance policy is a separate and distinct contract for the period of time covered by the renewal, unless it is apparent that the parties intended the renewal to constitute a continuation of the original policy. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 705 (Mo. banc 1984); *Hammond v. Mo. Prop. Ins. Placement Fac.*, 731 S.W.2d 360, 364 (Mo.App.1987). It is also true that, in the instant case, the Shelter agent who sold the policy to the Wests testified on cross-examination that each time the instant policy was reissued, including the renewal in May 1987, it constituted a new policy. Several other factors in the instant case, however, militate against the Wests' argument on this issue. Their petition alleged that the policy providing the coverage was issued in May 1985. Significantly, the evidence presented by the Wests concerning the changes and additions to the contents covered the entire period from the time of the initial policy in May 1985 until the loss, rather than the period from the renewal in May 1987 until the fire. The Wests therefore presented the case as if the date of the issuance of the policy for the purpose of the valued policy statutes was the date of the original policy.[6] This is inconsistent with the position they now take. A party is bound by the theory advanced at trial and is not permitted to change that theory on appeal. *Brinkerhoff Land & Livestock Co. v. Doyle*, 778 S.W.2d 336, 339 (Mo.App.1989).

It should also be noted that the only policy introduced in evidence at trial was the policy which was reissued in May 1986. While there was oral testimony that the policy was reissued in May 1987, the declaration sheet, if any, issued at that time was not introduced and its contents were not described in the evidence.

While the point presented by the Wests is phrased in terms suggesting that the verdict was inconsistent with the damage instruction, their argument seems to be based on the premise that they were entitled to a verdict for the full $16,500 as a matter of law, or that the verdict was against the weight of the evidence. For the reasons stated in this opinion, we do not believe that the Wests would have been entitled to a directed verdict in their favor for the full amount of the coverage they claim for the personal property. In addition, whether a verdict is against the weight of the evidence is a matter within the province of the trial court. *Lee v. Mirbaha*, 722 S.W.2d 80, 85 (Mo. banc 1986). If the trial court refuses to grant a new trial on that basis, appellate courts will not pass on the weight of the evidence. *Veach v. Chicago and North Western Transp. Co.*, 719 S.W.2d 767, 769 (Mo. banc 1986). Where a verdict is approved by the trial court, it is conclusive on appeal unless it is so shocking and grossly inadequate as to indicate that the amount was due to passion and prejudice. *Barr v. Plastic Surgery Consultants, Ltd.*, 760 S.W.2d 585, 588 (Mo.App.1988). Based on the particular facts of the instant case, we are not able to conclude that the instant verdict was due to passion and prejudice or that it was so grossly inadequate as to require reversal of the trial court. Point I is therefore denied.

### POINT II

In Point II, the Wests contend that the trial court erred in first subtracting the credit to Shelter from their recovery under the policy before calculating the interest to which they were entitled. In support of this point, the Wests contend that Shelter's payment to the Barbers and acceptance of an assignment of the note and deed of trust did not consti-

---

6. The damage instruction submitted by the Wests and given by the trial court was as follows:
   If you find in favor of the plaintiffs on their claim for damages, then you must award plaintiffs the sum of $30,000.00 for the loss of plaintiffs' lake house, and you must award plaintiffs the sum of $16,500.00 for the loss of plaintiffs' personal property, less depreciation, if any, plus interest on the above at the rate of 9% per annum from November 8, 1988.

tute a payment under the policy providing any benefit to the insured.

The insurance policy in the instant case contained a provision known as the "standard mortgage" or "union" clause. *Auto–Owners Mut. Ins. Co. v. Newman,* 851 S.W.2d 22, 26 (Mo.App.1993). It provided, in part:

> Whenever we shall pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, we shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt; or may at our option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; ...

Shelter paid the Barbers $16,210.78 on October 8, 1987 and took an assignment of the note and deed of trust. Thereafter, when suit was filed on the policy, Shelter not only sought an offset in the amount of such payment against any judgment the Wests might obtain, but it also sought affirmative relief. In its counterclaim, Shelter alleged that it had purchased the note and deed of trust and requested both a judgment in the amount of the note and foreclosure and sale of the property.

■■■ Under these circumstances, the purchase of the note did not constitute a payment on the fire insurance claim. *Kilpatrick v. Hartford Fire Ins. Co.,* 701 S.W.2d 755, 758 (Mo.App.1985). By purchasing the note and seeking payment from the Wests, Shelter was in the same position as any party who had purchased the note and sought to enforce it. *Id.* In essence, it was a substituted creditor. *Mears v. Columbia Mut. Ins. Co.,* 855 S.W.2d 389, 395 (Mo.App.1993).

■■■ This conclusion is reinforced by the fact that the "standard mortgage" clause constitutes an independent contract of insurance between the mortgagee (the Barbers) and the insurance company. *Auto–Owners Mut. Ins. Co. v. Newman,* 851 S.W.2d at 26. In addition, Missouri law presumes that transfer of a promissory note to a stranger to the instrument is a purchase and not satisfaction of the underlying obligation. *Id.* at 25.

Shelter relies on *Travelers Indemnity Co. v. Woods,* 663 S.W.2d 392 (Mo.App.1983), and *Sharaga v. Auto Owners Mut. Ins. Co.,* 831 S.W.2d 248 (Mo.App.1992), in arguing that the trial court did not err in calculating interest on the net amount of the recovery after deducting the credit. The *Sharaga* case, however, does not appear to involve an issue concerning whether interest should be calculated before or after deduction of the insurer's payment to the mortgagee. This court, in *Travelers,* did deduct the payment to the mortgagee before calculating interest. It is important to note, however, that in the *Travelers* case, unlike the instant case, there is no indication that the insurer purchased the note, accepted an assignment of the obligation, and then attempted to collect on the note from the insured. In *Travelers,* the insurer filed suit claiming the insureds intentionally burned the insured residence to defraud it and claimed damage by reason of its required payment to the mortgagee under the terms of the policy. *Id.* at 394. The *Travelers* case, therefore, involved payment under the policy and is distinguishable from the instant case where Shelter purchased the note and sought to enforce it as a substitute creditor.

Based on the facts of the instant case, we hold that Shelter's purchase of the note did not constitute a payment on the Wests' claim under the policy and it was not entitled to have that payment deducted from the Wests' recovery before interest was calculated.[7]

7. We note that the judgment entered by the trial court recited that the parties had stipulated prior to trial that the $16,210.78 paid to the mortgagees would be a credit to any judgment on the policy. The legal file presented to this court does not contain a copy of that stipulation or any evidence concerning its content. In addition, the stipulation or its effect is not mentioned in either of the briefs. We do not, therefore, consider the possible effect of that stipulation on the resolution of this point.

The judgment in the instant case is, therefore, reversed and remanded with directions to modify the judgment by calculating interest on the full recovery under the policy ($32,050) from November 8, 1988 until the date of the verdict (April 7, 1992) before deducting Shelter's stipulated credit of $16,-210.78. In all other respects, the judgment is affirmed.

FLANIGAN and PREWITT, JJ., concur.