RUNNY MEADE ESTATES, INC.,
Plaintiff–Appellant,

v.

DATAPAGE TECHNOLOGIES INTERNATIONAL, INC., Jack M. Delo and John Ingerslew, Defendants–Respondents.

No. 68226.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 4, 1996.

Rehearing Denied July 24,1996.

Briggs Law Center, Ross H. Briggs, Pacific, for appellant.

Peper, Martin, Jensen, Maichel and Hetlage, Lewis R. Mills; Richard J. Pautler and Lora A. Keller, St. Louis, for respondent.

HOFF, Judge.

Plaintiff, Runny Meade Estates, Inc. (Runny Meade), brought an action against defendant, Datapage Technologies International, Inc. (Datapage), for breach of contract and conversion.[1] The trial court sustained Datapage's motion for directed verdict at the close of Runny Meade's evidence. Runny Meade appeals and we affirm.

■ Runny Meade's action against Datapage is based upon a lease agreement executed by the parties on September 6, 1989. However, the lease was not furnished to us.[2] Thus, some of the following facts have been gleaned from the pleadings and documents in the legal files.

Datapage, a publisher of reference books and related material, leased a building from Runny Meade. Under the terms of the lease agreement, Datapage agreed to obtain and maintain an insurance policy "in the face amount of not less than the replacement cost of the [building]. . . ." According to Datapage's brief, the lease agreement did not specify the dollar amount of insurance required to be purchased and did not require Runny Meade's approval of the insurance policy purchased.

Datapage retained Steven Heying, Vice President of the St. Charles Insurance Agency, Inc., to determine the amount of insurance coverage needed to satisfy Datapage's obligations under the terms of the lease

---

1. Jack M. Delo, President of Datapage, and John Ingerslew, a Vice President of Datapage, each signed a guaranty securing Datapage's performance of the terms of the contract. Mr. Delo, Mr. Ingerslew and Datapage are referred to collectively as "Datapage."

2. As the appellant, Runny Meade has the burden of showing the trial court abused its discretion. *Boillet v. Conyer,* 826 S.W.2d 95, 96 (Mo.App. E.D.1992). Runny Meade has the duty to furnish an adequate record so its allegation of error can be reviewed with some degree of confidence. *Id.* Further, we are entitled to assume omitted portions of the record were unfavorable to Runny Meade, and that is why they were not included. *Id.* All evidentiary omissions in the record on appeal are presumed to support the trial court's decision. *Id.*

agreement. Mr. Heying independently appraised the building and determined the replacement cost of the building to be $800,000. Datapage obtained an insurance policy for $800,000 from Hartford Insurance Company. The insurance policy also provided coverage for "Betterments and Improvements" in the amount of $228,000. During the period the insurance policy was in effect, the coverage for "Betterments and Improvements" increased to $241,500. The policy was in effect for one year and, when the term came to an end, Datapage renewed the coverage for an additional year.

The building was damaged in a windstorm on November 27, 1990. Runny Meade determined the building was a "total loss" and began preparing a claim to recover the "replacement cost" insurance benefits available under the insurance policy. Runny Meade obtained a construction bid (Demien bid) for $803,292 from Demien Construction. The Demien bid included $19,850 for demolition and debris removal, which had separate coverage under the insurance policy, and $710,376 for replacement of the building and a ten percent profit. Runny Meade did not accept the Demien bid and the building was never replaced. Thereafter, Runny Meade submitted an insurance claim and was paid $800,000 under the replacement cost coverage of the insurance policy, including coverage for the "Betterments and Improvements." Datapage alleges Runny Meade received approximately $900,000 in all as a result of the insurance policy.

The insurance policy provided that if the building was not replaced it would pay the building's market value. Runny Meade did not offer any evidence at trial regarding the building's market value at the time of the loss. Cross-examination of Runny Meade's witnesses indicated the market value of the land and the building was approximately $650,000.

Runny Meade, however, did offer testimony from Rosemary Jedd, a real estate appraiser who supervised an appraisal of the building for a previous tenant in November 1985. Ms. Jedd testified the building appraised at $932,500 in November 1985 and opined the replacement cost of the building as of the date of the loss was $1,025,000. Ms. Jedd testified she arrived at this estimate by multiplying the 1985 appraisal figure by certain "trend factors" available in appraisal publications. These trend factors estimate construction costs in the United States and can be adjusted to apply to certain geographic locations. Ms. Jedd repeatedly qualified her estimate as a value "for insurance purposes" only. She did not provide any testimony regarding the actual cost of replacing the building and admitted she had no basis to dispute the merit of the Demien bid.

Runny Meade brought this action against Datapage alleging:

> [t]he policy procured by Datapage provided coverage to the building on the Premises at a limit of Eight Hundred Thousand Dollars ($800,000.00); whereas the actual cost to replace the building as a result of the windstorm is in the amount of One Million Two Hundred Ninety–Nine Thousand Twenty–Seven Dollars ($1,299,-027.00)....

As a result, Runny Meade alleged it suffered approximately $499,027 of damages. Runny Meade also alleged Datapage had removed items from the building which were building fixtures. At the close of Runny Meade's evidence, Datapage filed a motion for directed verdict which the trial court sustained. In granting the directed verdict against Runny Meade for its contract claim, the trial court held Runny Meade failed to make a submissible case on the issue of damages. Runny Meade raises three points on appeal.

■ A trial court may only sustain a defendant's motion for directed verdict when the facts in evidence and the reasonable inferences which can be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ. *Meridian Enterprises Corp. v. KCBS, Inc.*, 910 S.W.2d 329, 331 (Mo.App. E.D.1995). A case, however, should not be submitted to the jury unless each and every fact essential for liability is predicated on legal and substantial evidence, and the question whether the evidence is substantial is one of law for the court. *Id.*

A correct decision by a trial court on a motion for directed verdict will not be disturbed on appeal merely because the trial court gave a wrong or insufficient reason. Our concern on review is whether the trial court reached the proper result, not the route by which it reached that result. *Commerce Bank of St. Louis, N.A. v. Findley*, 874 S.W.2d 409, 411 (Mo.App. E.D.1994).

In its first point on appeal, Runny Meade argues the trial court erred by holding as a matter of law it did not make a submissible case on the issue of damages because the "total loss of [the] building entitled [Runny Meade] to the full amount of the insurance that should have been obtained for [the] building pursuant to the Missouri Valued Policy Statute, [§ 379.140 RSMo 1986]."

We initially note Missouri is a valued policy state in which the value of the property insured is agreed upon by the parties. *West v. Shelter Mutual Insurance Co.*, 864 S.W.2d 458, 460 (Mo.App. S.D.1993). If a total loss of the insured property occurs, then the insurance company is not permitted to deny that the insured property was worth, at the time the policy was issued, the full amount for which it was insured. *Id.* The insurance company must pay the stipulated value and the actual value is irrelevant. *Polytech, Inc. v. Affiliated FM Insurance Co.*, 21 F.3d 271, 273 (8th Cir.1994).

Runny Meade contends the trial court erred when it held Runny Meade's failure to refute the Demien bid for $803,292 conclusively established the value of the building on the date of the loss. Rather, Runny Meade contends, where the property is a total loss, as here, the actual value of the property is irrelevant for the collection of insurance proceeds and instead the relevant inquiry is the valuation of the property for "insurance purposes." Thus, Runny Meade urges this court to accept the testimony given by Ms. Jedd as proof of the building's replacement cost even though all evidence of the building's actual value was considerably less.

Whatever may be the merits of Runny Meade's argument, we find it unnecessary to consider it. Here, Datapage's obligation under the lease agreement was to obtain and maintain an insurance policy "in the face amount of not less than the replacement cost of the [building]. . . ." We have searched the record and we cannot find any evidence Datapage breached this obligation under the lease agreement. Runny Meade has not produced any evidence the replacement cost of the building, at the time the lease agreement was executed or at the time the building was destroyed, was more than the $800,000 limit contained in the insurance policy. All evidence is to the contrary. Similarly, there is no evidence Datapage was obligated under the terms of the lease agreement to obtain and maintain an insurance policy in excess of the building's replacement cost or, as Runny Meade insists, an insurance policy with as high of a limit as Datapage could persuade an insurance company to issue. Point denied.

In its second point on appeal, Runny Meade argues the trial court erred by holding as a matter of law it did not make a submissible case on the issue of damages. Runny Meade contends it was not required to prove actual damages in order to make a submissible case because in contract cases proof of the contract and of its breach gives rise to nominal damages. Although we acknowledge Runny Meade is correct that actual damages need not be proven in a contract action, our finding Datapage did not breach the lease agreement is dispositive and we need not address this point. Point denied.

In its third point on appeal, Runny Meade argues the trial court erred by holding as a matter of law Runny Meade failed to make a submissible case against Datapage for conversion. To make a submissible case of conversion, Runny Meade was required to present evidence: (1) of its possession, right to possession, or ownership which carries with it the right to immediate possession; (2) of taking against Runny Meade's will; and (3) of damages resulting from conversion, even if only nominal damages. *Stegeman v. First Missouri Bank of Gasconade County*, 722 S.W.2d 349, 352–353 (Mo.App. E.D.1987).

The principal question here is whether Runny Meade presented evidence of its right to possession of certain improvements. These improvements include a com-

puter, a raised floor, three computer room air conditioner units, a card access system, a computer room electronic door, demountable office walls, accordion partitions, a dark room revolving door, darkroom fixtures and a bar code. Runny Meade claims it is entitled to the improvements because they are building fixtures. In support of this argument, Runny Meade contends Datapage admitted it did not have a legal right to remove the improvements to the building when it insured them under the "Betterments and Improvements" provision of the insurance policy because this section of the insurance policy defines "Betterments and Improvements" as "fixtures, alterations, installations or additions ... made a part of the building [Datapage occupies] ... but cannot legally remove." (emphasis added). Datapage contends the improvements were trade fixtures and therefore it had the right to remove them.

■■■■ The distinction between trade fixtures and building fixtures was described in *Stockton v. Tester*, 273 S.W.2d 783, 787 (Mo.App. S.D.1954) as follows:

> Articles annexed to realty by a tenant for the purpose of carrying on a trade or business are considered as trade fixtures and are ordinarily removable by him. That the fixture is particularly adapted to a particular type of building does not (in itself) make it irremovable. If the article is placed in the building for the sole purpose of enabling the tenant to carry on his business, it is removable; but if the article is so placed as to make *the building itself* peculiarly adapted and more usable for the type of business, then it is not removable.

In distinguishing between trade fixtures and building fixtures, we consider the following elements: (1) the annexation to the realty; (2) the adaption to the use to which the realty is devoted; and (3) the intent that the object become a permanent accession to the land. *State ex rel. Missouri Highway and Transportation Commission v. Jim Lynch Toyota*, 835 S.W.2d 421, 425 (Mo.App. E.D. 1992). The intent of the annexor at the time of the annexation is controlling as to whether an improvement is to be considered a fixture. *Id.* We determine intent objectively from the facts and circumstances of a particular case. *Id.*

Here, Datapage contends the lease agreement provides:

> All alterations, additions and improvements to the Demised Premises by the Lessee **(expressly excluding, however, Lessee's trade fixtures and related furnishings and equipment)** shall at once become a part of the Demised Premises and the property of the Lessor and shall be surrendered to the Lessor upon termination of this Lease, unless such alterations, additions or improvements are removable form (sic) the Demised Premises without unreasonable damage thereto.

(emphasis supplied by Datapage). Because the lease agreement specifically refers to "trade fixtures and related furnishings and equipment", Runny Meade was required to produce adequate evidence that each and every item annexed to the building should remain its personal property. However, the only evidence Runny Meade relies on as proof these improvements were building fixtures is Datapage's decision to insure the improvements under the "Betterments and Improvements" provision of the insurance policy and this amounts to an admission. The trial court record reflects that the improvements were necessary for Datapage's business operation. Datapage's decision to insure the improvements under the "Betterments and Improvements" provision does not defeat its right to remove the improvements. The insurance policy's definition of "Betterments and Improvements" does not define "trade fixture" for purposes of the lease. This evidence is simply insufficient to prevent the trial court from concluding the improvements were business fixtures without resorting to gross speculation. We do not believe a submissible case was presented on conversion as to the improvements. Consequently, the trial court did not err in sustaining Datapage's motion for directed verdict.

The judgment of the trial court is affirmed.

CRANE, C.J., and GEORGE M. FLANIGAN, Senior Judge, concur.