JANET K. BAKER,                      )
                                     )
                                     ) Appeal No.
        Plaintiff-Appellee,          ) 01A01-9809-CH-00498
                                     )
v.                                   )
                                     ) Davidson Chancery
MUNDACA INVESTMENT                   )
CORPORATION,                         )
                                     )
        Defendant-Appellant,         )

FILED

June 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk


COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR


ROBERT D. TUKE and W. EDWARD RAMAGE
TUKE YOPP & SWEENEY, PLC
414 Union Street, Suite 1100
Nashville, Tennessee 37219
        Attorney for Plaintiff-Appellee

JEFFREY A. GREENE and G. MILLER HOGAN, II
CASTLEMAN & GREENE, PLLC
110 Glancy Street, Suite 109
Goodlettsville, Tennessee 37072
        Attorney for Defendant-Appellant


AFFIRMED AND REMANDED


                              HERSCHEL P. FRANKS, JUDGE


CONCUR:
GODDARD, P.J.
CANTRELL, J.

OPINION

This action involves a dispute over loan brokerage fees. Defendant-appellant Mundaca Investment Corp. ("Mundaca") purchased "loan packages" at auction. A single package typically consisted of several individual loans secured by real estate. Mundaca hired Plaintiff Janet Baker to assist it in obtaining financing to bid on these packages.

Under the parties' initial agreement, Baker received a 1.5% commission on all closed, funded loans. In December, 1992, the parties orally modified this agreement. According to Mundaca, the parties agreed that Baker would not receive a new commission each time Mundaca paid down its indebtedness and re-borrowed on the same line of credit. In exchange, Baker was to receive 1.5% of the entire amount of the line of credit at the beginning, regardless of the amount Mundaca actually borrowed. Mundaca contends that the parties did not modify the portion of the agreement requiring the loans to be closed before Baker earned her fee.

According to Baker, the parties agreed that she would receive only one commission on a given line of credit. In exchange, Mundaca would pay her commission when the lender committed to lend rather than when the loan actually closed.

Baker helped Mundaca to obtain a $5,000,000.00 loan commitment from SouthTrust Bank. A commitment agreement was signed on February 3, 1995, but the loan never closed. Baker sought a $75,000.00 commission, which Mundaca refused to pay.

This action resulted, and Baker initially brought four claims for unpaid fees. Mundaca paid fees for two of the claims before trial and Baker moved for summary judgment on the remaining claims. The Court granted summary judgment

on the second claim but denied it on the first.  The case was tried before a jury, where Baker asserted alternative claims for breach of contract or *quantum meruit*.  The Trial Court directed a verdict for Mundaca on the *quantum meruit* claim, and the jury returned a verdict for Baker on the contract claim for $75,000.00.

Mundaca contends that the Trial Court erred in admitting the testimony of plaintiff's two expert witnesses, and argues that the witnesses were not qualified and did not substantially assist the jury.

Questions regarding the admissibility, qualifications, relevancy and competency of an expert's testimony are generally left to the discretion of the trial court. *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257 (Tenn. 1997), *cert. denied*, 118 S.Ct. 2296 (1998).

Mundaca contends that the plaintiff's expert witnesses were not qualified because they lacked experience with the type of loans involved in this case. Specifically, neither had significant experience working with notes secured by real estate mortgages rather than the real estate itself.  Both witnesses, however, had extensive experience in the mortgage banking and brokerage industry.  The witnesses testified that, in their opinion, there was no difference between the loans involved in this case and other types of loans with which they were experienced.  They testified that the underlying security was the same in either instance.

The Trial Court has wide discretion in assessing the qualifications of experts.  We find no abuse of discretion by the Trial Court.  *See Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439 (Tenn. 1992).

Mundaca also argues the experts' testimony did not "substantially assist" the jury.  Generally, the question of what will "substantially assist" the jury is for the trial court to determine. *Primm v. Wickes Lumber Co.*, 845 S.W.2d 768 (Tenn.App. 1992).  In this case, the Trial Court limited the content of the experts'

testimony to the common practices in the industry, and did not allow any expert testimony concerning how the parties set fees in this case, nor did it permit testimony concerning the industry standards of setting a fee.

The testimony concerning common practices in the industry was relevant to the plaintiff's *quantum meruit* claim. Although the Trial Court ultimately granted a directed verdict on that issue, the motion for directed verdict was not made until after plaintiff had presented her experts. Thus, the *quantum meruit* claim was at issue when the evidence was admitted. *See Barr v. Plastic Surgery Consultants*, 760 S.W.2d 585 (Mo.Ct.App. 1988) (evidence relating to claim disposed of by directed verdict was relevant and material at trial as issue was still viable). Moreover, Mundaca was permitted to present its own expert on the issue.

Mundaca also argues that despite the Trial Court's limitation, one of the plaintiff's experts improperly testified that plaintiff had earned her fee under the facts of this case. The Trial Court sustained Mundaca's objection and issued a detailed curative instruction to the jury. The jury is presumed to have followed this instruction. *State v. Smith,* 893 S.W.2d 908 (Tenn. 1994). Taking into account other material evidence in favor of plaintiff's position, the brevity of the question and response and the detailed curative instruction, the Court did not err on this issue. Moreover, there is other evidence to support plaintiff's position, including her own testimony and evidence concerning the parties' course of conduct.

Mundaca next contends the Trial Court erred in admitting evidence of its financial condition. Specifically, the Trial Judge permitted counsel for plaintiff to question John Groomes, the Chairman of Mundaca, concerning the "created value" of the company. According to the witness, "[c]reated value is an estimate of what is out there to be collected . . ." The plaintiff argues that this evidence was important to establish her *quantum meruit* claim, which was still at issue at that point in the trial.

4

Specifically, she argues that the information was necessary to show that Mundaca benefitted from her services. Mundaca contends that this evidence was irrelevant even to the *quantum meruit* claim because only the payment for the SouthTrust loan was at issue.

In this case, the evidence concerning "created value" was introduced only for the years during which plaintiff provided brokerage services for Mundaca. No evidence was introduced concerning Mundaca's actual value at or near the time of trial. Additionally, the witness repeatedly explained that Mundaca's "created value" was different from its actual value.

Assuming, *arguendo*, that the Trial Court erred in admitting this evidence, we find no reversible error. The Trial Court instructed the jury to disregard all evidence concerning defendant's financial condition and not to consider that the plaintiff's contribution was a substantial or significant reason for Mundaca's success. Additionally, the Trial Court noted there were numerous other figures in evidence substantially similar in magnitude to the "created value" numbers. Some of the loans were for millions of dollars and one loan package was approximately $20,000,000.00.

Finally, Mundaca argues that the Trial Court erred in granting summary judgment on plaintiff's claim for a commission due on two loan renewals. The plaintiff's compensation for these loan renewals is not related to the modification of the parties' oral contract.

In her Motion for Summary Judgment, plaintiff stated that she and Mundaca agreed that she would receive a 1.5% fee annually upon the renewal of these two loans. She received a fee for January 1994 through December 1995, but not for the 1996 renewal. She also stated that she had always received renewal fees directly from Mundaca and that these fees were not related to the interest rates paid to the two lenders. The record also contains the affidavit of one of the lenders, K.R. Stanfill,

5

who stated that John Groomes informed him that plaintiff's fee was "in addition to the interest rate."

In response to plaintiff's motion, Mundaca included the affidavit of John Groomes. Groomes stated that he did not "believe" that plaintiff was entitled to a fee on these loan renewals. He further stated that because of an "apparent miscommunication," his company "believed" the renegotiated rate for 1996 included the plaintiff's fees. The affidavit fails to set forth specific facts contradicting plaintiff's affidavits. We therefore conclude that Mundaca's counter-affidavit did not establish a disputed material fact on the issue. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

We affirm the Trial Court's judgment approving the jury verdict and the granting of the summary judgment.

The cost of the appeal is assessed to the appellant and the cause remanded.

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Ben H. Cantrell, J.