**Ronald R. PORTER, Plaintiff-Appellant,**

v.

**Warren T. SMOOT, Jr., Defendant-Respondent.**

No. 23842.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Lantz Welch, Quinn, Peebles & Hickman, Kansas City, for appellant.

Byron J. Beck, Karl F. Schmidt, Morrison, Hecker, Cozad & Morrison, Kansas City, for respondent.

HUNTER, Judge.

Plaintiff, Ronald R. Porter, sued defendants, Warren T. Smoot, and John A. Chudley for $11,000 for personal injuries and for damage to his car. The jury verdict and judgment were for plaintiff and against defendant Smoot, and in favor of defendant Chudley in the amount of $150.00 for property damage, and in favor of both defendants on plaintiff's claim for personal injuries.

Plaintiff has appealed only from the judgment for $150.00 against defendant Smoot, claiming the trial court erred in fail-

ing to grant a new trial on the issue of damages, because the verdict was against all the evidence and was contrary to defendant Smoot's admissions in his opening statement and closing argument.

On April 20, 1960, about 4:15 p. m. plaintiff was driving his three months' old Morris Minor "compact" automobile in a southerly direction on the inside lane on Main Street in Kansas City. As he approached the Plaza district and was just north of 47th Street he drove down a long hill. About half way down it was a pedestrian blinker light which turned red. Plaintiff stopped his car at the pedestrian crosswalk pursuant to the red light.

Meanwhile, defendant Smoot in his 1955 Plymouth car was also driving south on the inside lane on Main Street. He came over the crest of the hill, proceeded down it and came to a stop about ten feet behind plaintiff's stationary vehicle. To quote Smoot, "I was sitting there with my foot on the brake pedal to hold the car, and the pedal went to the floor and I rolled into Mr. Porter's car." * * * "The first thing I did was pump the brake pedal, which is a normal reaction, and the next thing I remember doing was putting the car in a lower gear in hopes that it would slow it down, and then I reached for the emergency brake, pulled it out." There was considerable evidence from several witnesses to the effect the front flex line of the braking system of Smoot's car had broken making the foot brake ineffective, and that defendant Chudley, a service station operator, had done some brake work on the car several weeks before the accident.

According to Smoot's testimony the greatest speed his car attained in the ten foot distance before it struck plaintiff's car was one mile per hour. The impact knocked plaintiff's car forward "maybe five, ten feet." As to the resultant damage Smoot stated, "The only damage that I noticed to Mr. Porter's car was the bumper had a very small dent in it. * * * about as big as the end of your thumb." Smoot also stated his own car had "just a little scratch on the bumper."

Plaintiff testified to a considerably more substantial impact and damage to his car, produced a repair bill in the sum of $145.00 and stated his car was worth $150.00 less immediately after the impact than just before it. Plaintiff did not see defendant's car before the impact and did not have any personal knowledge of the Smoot car's speed at the time of the impact.

Turning to plaintiff's evidence concerning his claimed personal injuries, plaintiff stated at the scene of the accident that he was not injured. He said he had no pain at the scene, nor any cuts or bruises. He was "shook up", but went on home. There he was "a little nauseated." Before he went to bed he called up his best friend, a law student, who was then an employee of the Kansas City law firm presently representing plaintiff in this action and now a trial attorney in that firm. His friend went right out and took a statement from defendant Smoot on a recording machine.

The next morning, according to plaintiff, he got up and his neck was stiff and his back was sore. The following day he had the same condition so he contacted Dr. Huffman, an osteopath, who treated him a little less than a year for his complaints of terrific blinding headaches, a very stiff and sore neck, a very painful right shoulder and a dull pain in the lower center of his back that ripped down his right leg. Dr. Huffman used a kind of collar machine that would gradually raise and lower his head and gave him heat therapy, ultrasonic therapy and medicine. Dr. Huffman also took some X-rays, principally of the neck and back region. He saw Dr. Huffman about forty-five times and his medical bill was $340.00.

Plaintiff testified he was still having difficulty with his neck, with headaches and upper back-shoulder area when he met Dr. Yennie, a chiropractor, at a social gathering in the summer of 1961. On June 21, 1961, he switched over to Dr. Yennie, who treat-

ed him to the date of the trial, for a total of about sixty times at a cost of approximately $270.00. These treatments consisted of corrective manipulation, massage and heat. Plaintiff's complaints at trial time included headaches though less frequent, continued difficulty with his right shoulder and upper back, infrequent low back trouble, excessive fatigue and reduced efficiency at work.

On cross-examination plaintiff conceded that he was never confined to bed and other than the first seven days after the accident he worked regularly and in an employment involving considerable physical activity. His income from his employment continued to rise with each passing year. While he had "excessive" and "unnatural" fatigue he continued his normal social activities, including some swimming. He was able to do about everything at home and at work that he could do before the accident but experienced the mentioned fatigue. He admitted being in an automobile accident seven years earlier in which the driver of the car in which he rode was killed, and he settled his claim of personal injury for his back, which was just sore a week or two, for $500.00. In February, 1961, he applied for life insurance and in response to a question concerning claims for disability stated he had a whiplash neck injury in April, 1960, but that he "now" was in good health.

Generally, both Dr. Huffman and Dr. Yennie to some extent in their testimony supported plaintiff's claim of injury from the accident in question. However, each found a congenital defect in plaintiff's back. Both treated plaintiff principally on the basis of his subjective complaints. Both found some minimal muscle spasm about the neck, which under a hypothetical question they attributed to the accident in question. Dr. Huffman concluded plaintiff's injuries to be "a sprain or strain to the cervical muscles and associated ligaments. Also a sprain and strain of the low back." When asked if the forty-five treatments he gave were necessary he replied, "Well, at first I certainly

didn't think they would be. However, he continued to complain, and since I am unable to see pain or I can't look at a patient and tell whether he is uncomfortable or not, if he says he is sick, he is sick, I am going to treat him." Both doctors stated in the past they had been employed by plaintiff's present law firm counsel to examine other persons and to testify in other cases.

The defendants offered no evidence in the case.

We first discuss plaintiff's contention that the trial court erred in failing to grant a new trial on the issues of damages only, because the verdict was against all the evidence in the case.

■■ Where a jury in a personal injury action by its verdict has found liability it is bound to award plaintiff such damages, if any, as are commensurate with the nature and extent of the injuries incurred. The determination of that amount is primarily for the jury. Coghlan v. Trumbo, Mo.Sup., 179 S.W.2d 705, 706; Donahoo v. Illinois Terminal Railroad Company, Mo.Sup., 300 S.W.2d 461, 469.

In passing on plaintiff's motion for a new trial, which asserted the inadequacy of the damage award, the trial court weighed the evidence, and by overruling the motion in effect approved the amount of the award and found it to be not against the weight of the evidence.

■ Unlike the trial court, this court on plaintiff's appeal from the order overruling his motion for a new trial based on inadequacy of the verdict amount, does not weigh the evidence but determines only whether the trial court abused its discretion in ruling as it did. Roush v. Alkire Truck Lines, Mo.Sup., 245 S.W.2d 8, 10; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73.

■ In determining whether the verdict is grossly inadequate we must consider the evidence favorable to the verdict returned because it was the peculiar province of the

jury on the trial, and the trial judge on the motion for a new trial, to pass upon the weight of the evidence and the credibility of the witnesses.

 Several grounds are now recognized as individually sufficient for granting relief against either excessively large or shockingly inadequate awards. They were recently summarized in Pinkston v. McClanahan, Mo.Sup., 350 S.W.2d 724, 728: " ' [T]he test is and the fact of inadequacy is made to appear when the verdict is so meager as to be shocking and can be accounted for or justified only on the hypothesis that it resulted from passion and prejudice on the part of the jury.' But many cases recognize hypotheses other than passion and prejudice alone as accounting for, and as a ground of relief against either excessively large or shockingly inadequate awards. Cochran v. Wilson, 287 Mo. 210, 229 S.W. 1050, 1056, enumerates 'passion, prejudice or misconduct of the jury.' Vogrin v. Forum Cafeterias of America Inc., (Mo.) 308 S.W.2d 617, 622, says this: 'As to inadequacy of damages, the rule is that the jury's discretion is conclusive on appeal unless the verdict is so grossly or shockingly inadequate as to indicate that their discretion has been arbitrarily exercised and abused or is the result of passion and prejudice.' (Emphasis supplied.) See, also, Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915; Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S.W.2d 115."

 It is, of course, possible for a jury to find liability and also find that only property damage and no personal injuries resulted, if the evidence so permits. Such a verdict is not necessarily inconsistent. Not everyone who suffers property damage to his automobile in a collision is also personally injured. Different proof is required as to the claim of property damage and the claim of personal injury by plaintiff. The jury in a particular case might be satisfied by the evidence on the issue of property damage but not satisfied by the evidence that there was any personal injury at all, and properly find, under the instructions, the claimed property damage and also find no personal injury resulted to plaintiff from the accident. See, Skadal v. Brown, Mo. Sup., 351 S.W.2d 684.

In Davidson v. Schneider, Mo.Sup., 349 S.W.2d 908, 913, plaintiff sued for $35,000 for personal injuries and $250.00 for damage to his automobile. The jury's verdict was for $531.50 and plaintiff appealed, alleging inadequacy. In affirming the trial court, our Supreme Court noted, "The jury could find from the conflicting evidence that the plaintiff's complaints were all subjective, that his injuries were in fact trivial or not serious in the end result and they have awarded him his actually established financial losses. Thus upon this record 'the verdict can be reasonably accounted for on the theory that the jury believed only enough of plaintiff's evidence to fix liability' (Grodsky v. Consolidated Bag Co., 324 Mo. loc. cit. [1067] 1083, 26 S.W.2d loc. cit. [618] 624) and having commensurately made an award there is no occasion for this court's interference. Grayson v. Pellmounter, Mo.App., 308 S.W.2d 311."

In Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915, 920, plaintiff sued for $25,000 personal injury damages and recovered only $1,000. The trial court refused to grant a new trial. In affirming, the court pointed out, "The jury had the whole record before them, they could determine the credibility, weight and value of each witness and particularly the weight and value of appellant's own testimony concerning the pain, suffering and difficulties experienced * * *."

 Applying the foregoing established rules to the evidence before us we have concluded that it does not show as a matter of law that the trial judge abused his discretion in refusing a new trial because of the alleged inadequacy of the verdict. In performing its function of weighing and evaluating the testimony the jury could consider as persuasive on the issue of injury

or no injury the evidence that plaintiff stated at the scene he was not injured; that prior to seeking medical aid he consulted a law student employed by the present law firm handling this case; that he had no cuts, bruises, broken bones, or other apparent manifestations necessarily demonstrating injury (with the possible exception of some muscle spasm or tenderness as testified by plaintiff's doctors); that he was never confined to bed; that he substantially continued his former activities and work and lost no wages; that in February, 1961, he stated to an insurance company that he was in good health; that he had a minor back injury seven years earlier and that he also had a congenital defect that could possibly account for some of his complaints. This evidence plus other evidence in which he had to correct a few misstatements in his deposition which at least to some extent bore on the issue of credibility is such as to prevent us from declaring that the trial court erred in the respect charged.

Plaintiff calls our attention to the recent cases of Wise v. Towse, Mo.App., 366 S.W. 2d 506, and Hay v. Ham, Mo.App., 364 S.W. 2d 118. However, those case are quite distinguishable on their facts and concern and rule entirely different questions. In the Wise case the court erroneously refused to allow the jury to consider certain evidence of medical expense, and in the Hay case the jury was permitted to consider and it allowed certain medical expenses. The question was whether the evidence was sufficient to support that action.

Plaintiff's other contention is that the verdict was contrary to defendant Smoot's counsel's admissions in his opening statement and closing argument. Plaintiff claims Smoot's counsel made the judicial admission that plaintiff suffered some personal injury from the accident, and that therefore the verdict must grant some damages for the admitted personal injury to escape being reversibly erroneous. The difficulty with this contention is that a fair

reading of what plaintiff's counsel said not only does not amount to a *judicial admission* of some injury (see Daly v. Schaefer, Mo.App., 331 S.W.2d 150, 155) but in fact was no more than a part of Smoot's counsel's trial technique in which he took the general position that *if* plaintiff had any injury it was at most only minor. In his answer Smoot's counsel specifically denied that plaintiff had received any injury from the accident, and in his general conduct throughout the trial he did not abandon that denial. We find no merit in plaintiff's contention to the contrary.

The judgment is affirmed.

All concur.