**Daren MOON, Appellant,**

v.

**HY–VEE, INC., Respondent.**

**No. WD 73695.**

Missouri Court of Appeals, Western District.

Nov. 8, 2011.

---

Laura Del Percio, Independence, MO, for Appellant.

William Lewis, Haley Peerson, Smithville, MO, for Respondent.

Before: ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

THOMAS H. NEWTON, Judge.

Mr. Daren Moon appeals from the trial court's judgment in favor of Hy–Vee, Inc. on Mr. Moon's personal injury claim. Mr. Moon contends the trial court erred in denying a motion for new trial based on alleged error in the trial court's evidentiary rulings. Because we find it was prejudicial error to admit evidence of jury verdicts in unrelated cases, we reverse and remand for new trial.

**Factual and Procedural Background**

Mr. Moon sued Hy–Vee for negligence, alleging he had slipped and fallen on the wet floor of its Gladstone store. He claimed Hy–Vee was negligent because it "failed to use ordinary care to maintain, modify, repair, correct, inspect or warn the general public ... of a defective and dangerous condition" and that, as a result, Mr. Moon suffered permanent and progressive injury to his back.

At a jury trial, Mr. Moon attempted to show that the store's entryway was wet on the day of his fall, that Hy–Vee took insufficient safety measures, and that the fall had caused permanent injury. Hy–Vee disputed that the floor was wet and offered expert testimony to refute other elements of Mr. Moon's allegations.

The jury found for Hy–Vee, and Mr. Moon moved for a new trial, alleging sev-

eral points of trial court error. The trial court denied the motion. Mr. Moon appeals, raising five points. As the first point is dispositive, we do not address the others.

## Standard of Review

We review the trial court's denial of a motion for new trial under an abuse of discretion standard. *Arrington v. Goodrich Quality Theaters, Inc.*, 266 S.W.3d 856, 860 (Mo.App. S.D.2008). The trial court abuses its discretion when its ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* If reasonable people could differ, then the trial court's discretion has not been abused. *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Id.*

The decision to admit or exclude evidence is also within the trial court's discretion. *Id.* at 864. We presume its rulings are correct and it is the appellant's burden to establish the abuse. *Id.*

## Legal Analysis

In the first point, Mr. Moon argues that the trial court erred in denying the motion for new trial because the jury was allowed to consider irrelevant and unduly prejudicial evidence of prior, unrelated verdicts in favor of Hy–Vee. He contests two instances at trial in which Hy–Vee asked its experts about the results of unrelated trials on redirect examination.

The first instance occurred on redirect of an orthopedic surgeon testifying as an expert for Hy–Vee. The surgeon testified that he did not believe Mr. Moon suffered permanent back injury from his fall. On cross-examination, counsel for Mr. Moon questioned the surgeon about cases in which the surgeon had previously testified

for Hy–Vee. She asked about four cases by case name and county and elicited that the testimony in each case was for the same defense attorneys as in the instant case. The trial court overruled Hy–Vee's objection that the questioning was cumulative in that the surgeon had "already testified that he's served as an expert witness for us on numerous occasions."

On redirect, Hy–Vee asked the surgeon: "[W]ith respect to those four cases, you did a pretty good job because we won all of them, isn't that true?" Mr. Moon objected to relevancy, and the trial court sustained the objection. The trial court instructed the jury to disregard the question. Mr. Moon moved for a mistrial, and the trial court denied it.

The second instance occurred on redirect of an expert testifying for Hy–Vee on floor safety standards. The floor safety expert testified that Hy–Vee's safety policy and flooring met industry standards, and that Mr. Moon could not have fallen in the manner he described. On cross-examination, counsel for Mr. Moon asked the floor safety expert whether he had testified for the same defense attorneys on behalf of Hy–Vee in a specific case in Jackson County. Hy–Vee objected to relevancy. The trial court stated that "[l]imited inquiry will be allowed on cross-examination" and instructed Mr. Moon not to "get into a lot of specific details . . . of the case."

Counsel for Mr. Moon then elicited that in that case, the same orthopedic surgeon had also testified for Hy–Vee, that the case had the same defense attorneys, and that the plaintiff had different representation. Counsel for Mr. Moon proceeded to ask about a second case in which the floor safety expert had testified for Hy–Vee, eliciting that the same orthopedic surgeon had also testified for Hy–Vee, that the

case had the same defense attorneys, and that the plaintiff had different representation. Finally, Mr. Moon asked about two additional cases by name and venue in Jackson County, eliciting that the floor safety expert had testified for Hy–Vee and that the same defense attorneys represented Hy–Vee.

Prior to its redirect, Hy–Vee asked to approach the bench. It argued to the court that it should be permitted to ask the floor safety expert about the results of the cases brought out in cross because of the inference Mr. Moon had raised "that Hy–Vee is getting sued because they're not doing things right." Counsel for Mr. Moon contended that "any sort of verdicts are completely irrelevant and create mini-trials within mini trials." Hy–Vee argued that Mr. Moon opened the door; Mr. Moon contended that his question was permissible inquiry into credibility and went directly to bias. The following conversation then took place:

The Court: I think with the amount of detail with the name of the case, where it was tried, who the lawyers were, who the experts were, I think you can legitimately inquire if a person has historically been employed by a lawyer, or a particular defendant in cases.

And that does show the relationship between them. This went beyond that, it was the name of the case, who other experts were, where they were tried, and, so, forth. I, I don't see any harm into allowing limited inquiry about what you're describing.

. . . .

[Plaintiff's Counsel]: Okay, just so I understand, is this being allowed, then?

The Court: Yeah.

[Plaintiff's Counsel]: For [Defense Counsel] to—

The Court: I don't know exactly what he's going to ask. I'll listen to the ob-

jections as they come, and I'll rule the objections . . . if any, as they come.

Redirect then proceeded:

[Defense Counsel]: . . . those cases that were referred to, Cooper, that you testified in, that was down in Jackson County downtown?

[Floor Safety Expert]: Yes, it was.

[Defense Counsel]: And did that involve a different Hy–Vee?

[Floor Safety Expert]: Yes.

[Defense Counsel]: All right. But essentially the policies and procedures of that Hy–Vee, were they very similar or the same as the Gladstone Hy–Vee?

[Floor Safety Expert]: Yes, they're the same.

[Defense Counsel]: And did the jury find in favor of Hy–Vee in that case?

[Plaintiff's Counsel]: Objection—

[Floor Safety Expert]: Yes.

[Plaintiff's Counsel]: It's irrelevant.

The Court: Overruled.

[Defense Counsel]: Did they find in favor of Hy–Vee in that case?

[Floor Safety Expert]: Yes, they did.

[Defense Counsel]: The case of Walton versus Hy–Vee, which was up in Platte County, did you testify in that case?

[Floor Safety Expert]: Yes, I did.

[Defense Counsel]: Again, did that involve the same policies and procedures?

[Floor Safety Expert]: Yes, it did.

[Defense Counsel]: Did the jury find in favor of Hy–Vee in that case as well?

[Plaintiff's Counsel]: Objection, irrelevant.

[Floor Safety Expert]: Yes.

The Court: Overruled.

[Floor Safety Expert]: Yes they did.

[Defense Counsel]: And in any of those cases, sir, are you aware of, that you

testified in, do you know of any of those cases in which the jury awarded an amount, or awarded an amount that the plaintiff asked for?

[Floor Safety Expert]: No, I don't think in any of those cases the plaintiffs ever were awarded anything.

[Defense Counsel]: I believe maybe in perhaps Royal they might've been awarded something. Do you know if that was less than the amount they requested.

[Floor Safety Expert]: I, I don't know what the amount would be. I don't recall.

[Defense Counsel]: In Schnabel versus Hy–Vee—

[Floor Safety Expert]: Again, I don't recall the actual dollar sometime, but it would be, it was less than what the plaintiff had—

[Defense Counsel]: Was it, in fact, nothing?

[Floor Safety Expert]: Yeah, it was zero.

[Defense Counsel]: Espelin versus Hy–Vee, which was a case you testified in down in Jackson County, the jury found in favor of Hy–Vee, correct?

[Floor Safety Expert]: They did, correct.

[Defense Counsel]: . . . Those same policies and procedures were an issue in that case, true?

[Floor Safety Expert]: Yes, they were.

■ The trial court appears to have reasoned that admission of the jury verdicts was permissible because Mr. Moon opened the door by asking about specific cases, rather than asking generally about the relationship between the expert and the defendant. If a party "invites incompetent evidence, he estops himself from objecting to the other party following it up with testimony tending to explain his side of the controversy." *Baker v. Thompson–Hayward Chem. Co.*, 316 S.W.2d 652, 657 (Mo. App.1958) (internal quotation marks and citation omitted).

■ However, we do not believe Mr. Moon invited incompetent evidence, nor do we believe it was permissible to allow Hy–Vee to bring in the jury verdicts from unrelated cases pertaining to the "same policies and procedures."

■ First, Mr. Moon's cross-examination was a proper attempt to demonstrate bias. Parties are given wide latitude in their cross-examinations of expert witnesses "to test qualifications, credibility, skill or knowledge, and value and accuracy of opinion." *Montgomery v. Wilson*, 331 S.W.3d 332, 341 (Mo.App. W.D.2011) (internal quotation marks and citation omitted). The jury must determine the witness's credibility and the weight to give her testimony; it is entitled to know information that would affect this determination. *Id.* Consequently, the witness's bias or prejudice may always be shown, subject to the trial court's discretion. *Id.*; *Brantley v. Sears Roebuck & Co.*, 959 S.W.2d 927, 929 (Mo.App. E.D.1998). It is not improper to ask an expert how frequently he appears on behalf of the defendant because the question speaks to the expert's bias. *See Weatherly v. Miskle*, 655 S.W.2d 842, 844 (Mo.App. E.D.1983). Nor is it improper to attempt to show bias by the witness's participation in unrelated cases: "Cross-examination of a witness as to previous or unrelated cases a witness has had involvement in is permissible in the context of bias." *Montgomery*, 331 S.W.3d at 342.

■ Second, while Mr. Moon's questioning opened the door for Hy–Vee to rebut the inference of bias, interjection of the jury results on redirect exceeded a permissible rebuttal. Redirect is intended

to allow a witness the "opportunity to explain or avoid the consequences of new matter brought out on his cross-examination, and to rebut the discrediting effect of damaging statements or admissions elicited from him." *Couch v. St. Louis Pub. Serv. Co.*, 173 S.W.2d 617, 623 (Mo.App. 1943). The witness is allowed to offer a full explanation of the issues raised in the cross-examination. *Johnson v. Minihan*, 355 Mo. 1208, 200 S.W.2d 334, 336 (1947).

 However, all evidence must still be logically and legally relevant to be admissible. *Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 250 (Mo.App. W.D.2010). Logically relevant evidence makes a fact of consequence to the outcome of the case more or less probable, or corroborates other relevant evidence. *Id.* To be legally relevant, the evidence's probative value must outweigh: "the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence." *Id.*

 As noted, evidence pertaining to bias is generally logically relevant because it is probative of the witness's credibility. Evidence of the jury verdicts in the cases against Hy–Vee, however, had little bearing on bias. Although Hy–Vee argues the verdicts were admissible to rebut an inference raised by Mr. Moon's questioning—that because Hy–Vee had been sued previously, it must have been negligent in the instant case—we do not believe the verdicts were probative of this inference. The jury verdicts in other cases are not probative of a defendant's negligence in a present case, particularly here, where there was no factual development of those cases. *See, e.g., Barr v. Plastic Surgery Consultants, Ltd.*, 760 S.W.2d 585, 587 (Mo.App. E.D.1988) (finding other lawsuits with competing outcomes against the de-

fendant physician were at best slightly probative of competency and risk of prejudice and confusion was large). This is particularly true when the questioning, including by Hy–Vee's counsel on redirect, made clear that the other cases involved other Hy–Vee locations, not the Gladstone store where Mr. Moon fell.

 Further, the jury verdicts were highly prejudicial. Mr. Moon was entitled to try his case on the merits of his facts, not on the merits of other cases. It is a valid concern that a jury will decide the case based on the verdicts of other juries rather than the evidence before it. *See, e.g., Chism v. CNH America LLC*, 638 F.3d 637, 640, 641 (8th Cir.2011) (finding that jury verdicts are not categorically inadmissible but are "undoubtedly prejudicial"). The verdicts had, at most, limited probative value and the costs of admitting the verdicts—confusing the issues, misleading the juries, creating the hazards of minitrials—were readily apparent. *See Barr*, 760 S.W.2d at 587–88. Here, because the costs outweighed the probative value, and admission of the verdicts could not be justified by Mr. Moon's actions, the verdicts were neither legally relevant nor admissible.

Hy–Vee's own questioning on redirect established that none of the other cases involved the Gladstone store, thereby alleviating any potential prejudice to Hy–Vee from an inference that the other cases concerned the same store where Mr. Moon was injured. Despite having removed this inference, Hy–Vee's counsel then went on to emphasize that, in those other cases, "very similar or the same" policies and procedures were at issue as in the instant case. Thus, Hy–Vee's counsel gratuitously elicited testimony from the floor safety expert that juries in other cases, involving Hy–Vee's other stores, had absolved Hy–Vee of liability where "the same policies

and procedures" were in place. This testimony is particularly significant because, in this case, one of the contested issues at trial was the nature, and implementation, of Hy–Vee's policy concerning the placement of floor mats at entryways when it was raining.

Hy–Vee's counsel went even further, however. After interjecting the jury's findings on liability in those other trials, counsel then invited the floor safety expert to agree that, in the one case in which the jury had returned a verdict for the plaintiff, the jury awarded the plaintiff, "nothing," "zero." We can perceive of no conceivable relevance to the amount of the damages award in this other case. Indeed, establishing that the jury in an earlier case apparently found liability, but refused to award any damages, suggests that the earlier jury disbelieved the floor safety expert's testimony, which was relevant only to liability issues. The only purpose of this damages testimony that we can perceive would be to plant in the jurors' minds the suggestion that even if they found Hy–Vee liable, they could choose to award minimal or no damages, as a prior jury had done. Such a suggestion is plainly, and unfairly, prejudicial.

Finally, we see no meaningful distinction between Mr. Moon's questioning of the surgeon and the floor safety expert about prior cases in which they had testified for Hy–Vee. Yet, the trial court issued opposing rulings on the objections during each redirect. In the first instance, the trial court correctly sustained Mr. Moon's objection to Hy–Vee asking the surgeon about prior verdicts and instructed the jury to disregard the question. *See Zarisky v. Kansas City Pub. Serv. Co.*, 239 Mo.App. 396, 186 S.W.2d 854, 857 (1945). However, in the second instance, the trial court overruled Mr. Moon's objection, permitted the witness to answer, and Hy–Vee

proceeded to question even further as to the cases involving the same policies and procedures and the nature of the damages awards. We find the trial court abused its discretion in admitting the evidence concerning the unrelated verdicts.

Mr. Moon's first point is granted. As the first point is dispositive, we do not address his four remaining points.

### Conclusion

Therefore, the trial court's judgment is reversed and remanded for new trial.

AHJUA, P.J., and WELSH, J., concur.