**NORFOLK SOUTHERN RAILWAY COMPANY, Appellant–Respondent,**

v.

**CROWN POWER & EQUIPMENT CO., L.L.C., Respondent–Appellant.**

Nos. WD 73586, WD 73616.

Missouri Court of Appeals, Western District.

June 26, 2012.

Application for Transfer Denied July 31, 2012.

Richard E. McLeod, Kansas City, MO, for Appellant–Respondent.

Larry J. Tyrl, Overland Park, KS, for Respondent–Appellant.

Before Division One: CYNTHIA L. MARTIN, Presiding Judge, and THOMAS H. NEWTON and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This case involves an alleged error by the jury in recording its verdict. The primary issue is whether the trial court erred in denying the plaintiff's motion for additur or, in the alternative, for a new trial as to damages only, when the damage award contained in the verdict was contrary to the uncontested facts in the record but when there was no clear alternative to the jury's damage award. We hold that, under these facts, the court should have granted a new trial with respect to damages only.

Another issue is whether the court erred in disregarding jurors' affidavits and other evidence purporting to establish that, contrary to the court's instructions, the jury reduced the plaintiff's damages by the applicable percentage of fault,[1] when the uncontested evidence showed that the jury could not have rendered a verdict for the plaintiff in the amount stated on the verdict form. We hold that, given that the verdict was unambiguous on its face, and given further that the record did not reveal a clear alternative as to create an ambiguity, the trial court did not err in denying the plaintiff's motion to amend the judgment or the plaintiff's motion for additur.

The trial court properly denied both the plaintiff's motion for a new trial based on the exclusion of expert testimony and the defendant's post-trial motion. Accordingly, we affirm in part, reverse in part, and remand for a new trial as to damages only.

### Facts and Procedural Background[2]

■ At a railroad crossing in Keytesville, Missouri, a large trailer got stuck on the tracks. Michael Sehlke, an employee of Respondent Crown Power and Equipment, L.L.C., was driving the truck that was transporting the trailer. Sehlke attempted to drive the truck backward and forward, but the trailer would not move. Jason Neidholdt, who was an acquaintance of Sehlke's, stopped to aid Sehlke, and the two men looked under the trailer and saw that a wheel was caught on the tracks.

Soon thereafter,[3] a train owned by Appellant Norfolk Southern Railway Compa-

---

1. The court was to reduce the total damages by the applicable percentage of fault *after* the jury rendered its verdict.

2. On appeal from a jury trial, we review the facts in the light most favorable to the jury's verdict. *Secrist v. Treadstone, LLC*, 356 S.W.3d 276, 278 n. 1 (Mo.App. W.D.2011).

3. The parties vigorously disputed the amount of time that passed between the trailer getting stuck and the accident, but the amount of time that passed is not relevant to this appeal.

ny came into sight, and it became evident that a collision would occur unless the train could be stopped or the trailer moved. A customer of Sehlke's was nearby, and, with his assistance, Sehlke attempted to dislodge the trailer from the tracks by chaining the trailer to a pickup truck and Sehlke's own truck and then attempting to jerk the trailer free with the combined power of the two trucks. The attempt failed. Neidholdt also called a number that was listed on the railroad crossing. However, no one called 911 until after the accident.

The conductor and the engineer saw that something was on the tracks. Once they determined that the object on the tracks was not moving, they put the train "into emergency," which means that the train would stop as soon as possible under the circumstances. Sehlke continued trying to dislodge the trailer, but he finally abandoned the attempt and fled for safety.

The train struck the trailer and derailed. The accident caused no serious physical injury to anyone, but Norfolk sustained damages in that its train, rail cars, and cargo[4] were damaged, and its ability to meet its clients' needs was impeded during the time it took to clear the tracks.

Norfolk sued Crown for negligence. Crown raised comparative fault as a defense. Crown argued that Norfolk could have stopped the train before impact if its personnel had been maintaining a proper lookout.

Crown also argued that (1) Norfolk had a duty to maintain the crossing at a level grade in accordance with a regulation, 4 CSR 265–8.130(1)(B); (2) Norfolk breached that duty; and (3) the breach caused the trailer to get caught on the rails, which in turn caused the accident. Norfolk filed a motion in limine, arguing that the trial court should exclude any evidence of Norfolk's alleged failure to adhere to 4 CSR 265–8.130(1)(B). The court initially denied the motion, but, during trial, the court excluded any testimony regarding 4 CSR 265–8.130(1)(B), ruling that the regulation stated only that its specifications were desirable (as opposed to mandatory) and that it would be impossible to instruct the jury on such a regulation. Crown also sought to have its expert opine regarding a different subset of the regulation, 4 CSR 265–8.130(2)(A), but the court excluded such testimony because Crown had not disclosed that its expert had formed an opinion regarding any noncompliance with that subsection. The court also refused Crown's jury instructions regarding Norfolk's alleged failure to comply with 4 CSR 265–8.130.

Norfolk called an expert witness who testified regarding the proper standard of care for a truck driver towing a large piece of equipment like the trailer. The expert testified that Sehlke breached the proper standard of care in that he failed to (1) plan a safe route; (2) drive over the crossing at an appropriate rate of speed; (3) measure the amount of clearance he had between the trailer and the ground; and (4) notice that the trailer would not be able to clear the railroad crossing. Norfolk sought to ask the expert whether the proper standard of care included calling 911 immediately after it became apparent that the trailer was stuck on the tracks. The trial court excluded the testimony, stating that it was a matter of common knowledge that someone can call 911 to report an emergency and that it was therefore unnecessary for the expert to so testify.

4. The train included "autoracks," a type of rail car, that were being used to transport motor vehicles.

In his opening statement, Crown's attorney stated the following:

Ladies and gentlemen, damages. I'm not going to have a lot to say about damages because I really believe that the evidence is going to establish that it is the responsibility of the Norfolk Southern for this accident.

But they did—they hired a gentleman by the name of Gary Hunter, paid him over $35,000 for two months' work, and he's come up with a bunch of damages. *Some of the damages there's no dispute about. You know, the cost of the destroyed automobiles that had to be salvaged, we're not disputing that. We're not disputing the repair cost to some of the engines, but there is a lot of this damage, about 4 million dollars' worth, that I think the evidence will show that he just pulled it out of the air.*

One of the things that he testifies is the impact of the slow order. He calculated some $375,000. Another railroad employee himself calculated the loss because of the impact of the slow order at about $3,000. So I'm not going to have a lot to say about damages because I think the real issue in this case is liability, responsibility, who's responsible, and I believe the evidence will be it's Norfolk Southern.

(Emphasis added.) Then, in his closing argument, Crown's attorney argued as follows:

Ladies and gentlemen, *I told you in my opening statement, some of the damages don't even really dispute. Don't dispute the 1.8 million dollars on the bill of lad[ing]. Don't dispute the clean-up costs from the derailment. Don't dispute the autorack cars that were destroyed and their depreciated value, but there are some of the damages that I do dispute.* The 2 million dollars loss of revenue on the engines, the 400 or 500,-

000 dollars for the loss of revenue on these autorack cars, the overhead—ladies and gentlemen, I do dispute that.

. . . .

Now, ladies and gentlemen, *I would say 50 percent of the damages in this case* that Mr. Hunter has been paid $33,000 to calculate *is fluff,* and I would urge you to use your common sense when you go back into that jury room.

(Emphasis added.)

Norfolk argued to the jury that its total damages amounted to either $7,248,467.83 or $7,004,567.83.

The trial court submitted the case with a comparative fault instruction, and the jury returned a verdict finding Crown 24.4% at fault and Norfolk 75.6% at fault. The verdict form also stated that "We, the undersigned jurors, find the total amount of plaintiff Norfolk Southern's damages disregarding any fault on the part of the plaintiff to be $1,709,114.55."

The trial court applied the percentage of Crown's fault (24.4%) to the total damages listed on the verdict form ($1,709,114.55) and entered a $417,023.95 judgment in Norfolk's favor.

Norfolk filed a motion for a new trial, a motion for additur or in the alternative for a new trial as to damages only, and a motion to amend the judgment. Along with the motion to amend the judgment, Norfolk submitted affidavits from all twelve jurors. The affidavits stated that the jury had agreed that Norfolk's damages were $7,004,567.83 and that, in arriving at their verdict, they reduced the total damages by the percentage of Norfolk's fault (75.6%). The affidavits stated further that the jury did not intend for the damages to be reduced again and that their verdict was that Norfolk should actually receive $1,709,114.55. The Motion to Amend the Judgment also noted that

$1,709,114.55 is exactly 24.4% of $7,004,567.83.

In its motion for a new trial, Norfolk argued that the trial court erred in excluding its expert's testimony regarding Sehlke's alleged breach of the proper standard of care in failing to call 911.

Crown filed a motion titled "Alternative Post–Trial Motion for the Trial Court and Appellate Court's Consideration Should Plaintiff's Motion for a New Trial be Granted." Crown argued that, if any post-trial relief were to be granted Norfolk, Crown was entitled to a new trial because the trial court erred in (1) excluding expert testimony regarding 4 CSR 265–8.130; and (2) refusing to instruct the jury regarding Norfolk's alleged duty to comply with that regulation and/or its alleged duty to warn others regarding its noncompliance with that regulation.

The trial court denied all post-trial motions. Norfolk appeals; Crown cross-appeals.

## Standard of Review

We review the trial court's denial of a motion for a new trial for abuse of discretion. *Mo. Dep't of Transp. ex rel. PR Developers, Inc. v. Safeco Ins. Co. of Am.*, 97 S.W.3d 21, 31–32 (Mo.App. E.D. 2002). Unlike the trial court, we do not reweigh the evidence when the plaintiff appeals the denial of a motion for a new trial; instead, we focus only on whether the court's action constitutes an abuse of discretion. *Porter v. Smoot*, 375 S.W.2d 209, 212 (Mo.App.1964).

Likewise, in reviewing the trial court's ruling on a motion to amend the judgment, we will not reverse the trial court unless it abused its discretion, and the same is true with respect to a motion for additur. *Autumn Ridge Homeowners Ass'n, Inc. v. Occhipinto*, 311 S.W.3d 415, 419 (Mo.App. W.D.2010) (motion to amend the judgment); *Calarosa v. Stowell*, 32 S.W.3d 138, 147 (Mo.App. W.D.2000) (motion for additur).

Further, we will not reverse an evidentiary ruling unless the trial court abused its discretion, and the party appealing the ruling must also show that it was prejudiced by the evidence's exclusion. *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 585 (Mo.App. W.D.2001). Also, " '[w]hen a party claims that the trial court erroneously refused to submit an instruction ... we review the trial court's refusal to submit the instruction for abuse of discretion.' " *McCullough v. Commerce Bank*, 349 S.W.3d 389, 396 (Mo.App. W.D. 2011) (quoting *Wiskur v. Johnson*, 156 S.W.3d 477, 481 (Mo.App. S.D.2005)). But "Rule 70.02(a) does not admit discretion on the part of the trial judge *if* the proffered instruction is supported by the evidence and the law and is in proper form." *Marion v. Marcus*, 199 S.W.3d 887, 892 (Mo. App. W.D.2006) (emphasis added). A party appealing the trial court's refusal to give an instruction must also show prejudice. *Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 252 (Mo.App. W.D.2010).

A circuit court abuses its discretion when its ruling shocks the sense of justice, shows a lack of consideration, and is obviously against the logic of the circumstances. *River City Dev. Assocs., LLC v. Accurate Disbursing Co., LLC*, 345 S.W.3d 867, 871 (Mo.App. E.D.2011). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 648 (Mo. banc 1997).

## Analysis

**I. Norfolk's motion for additur, or, in the alternative, for a new trial as to damages only**

In Point II[5] of its appeal, Norfolk argues that the trial court erred in denying its motion for additur or, in the alternative, for a new trial as to damages only, in that Crown judicially admitted that Norfolk's damages exceeded the amount found by the jury. We agree that the trial court should have granted a new trial as to damages only.[6]

Upon good cause shown, the trial court may grant a new trial as to any issue. Rule 78.01. A new trial is appropriate as to damages when the verdict is so grossly or shockingly inadequate as to indicate that (1) the jury exercised its discretion in an arbitrary manner; or (2) the verdict was the product of passion and prejudice. *Porter*, 375 S.W.2d at 213.

Here, the verdict was so grossly inadequate as to indicate an arbitrary exercise of the jury's discretion.[7] Such is the case because the jury's finding of total damages was millions of dollars less than the amount that Crown admitted that Norfolk incurred. Crown vigorously contested liability, and it also contested *some* of Norfolk's claimed damages. But Crown did not dispute that Norfolk was damaged in an amount far exceeding $1,709,114.55, the jury's finding of total damages.

A statement by counsel made during trial is a binding judicial admission if, and only if, the statement constitutes a clear, unequivocal admission of fact. *McCarthy v. Wulff*, 452 S.W.2d 164, 167 (Mo.1970); *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 799 (Mo.App.1975). Crown's attorney made the following statements: "Don't dispute the 1.8 million dollars on the bill of lad[ing]. Don't dispute the cleanup costs from the derailment. Don't dispute the autorack cars that were destroyed and their depreciated value." The referenced cleanup costs were $485,034.95. The referenced damage to the autorack cars was $889,817. Crown's counsel also stated: "You know, the cost of the destroyed automobiles that had to be salvaged, we're not disputing that." The cost to the destroyed automobiles was $1,868,957.35.[8] Those statements are clear and unequivocal, and, as such, they had the effect of judicially admitting that Norfolk was damaged in an amount that exceeds (by a great margin) the jury's finding of $1,709,114.55.

Since the jury's verdict was for an amount substantially less than that admitted by Crown,[9] the verdict is grossly inad-

5. For the sake of efficiency and logic, we address the parties' points on appeal out of order.

6. Whether the trial court should have ordered additur to reflect the amount contained in the jurors' affidavits is dependent upon whether the jurors' affidavits could be legally recognized at all. Accordingly, we address that aspect of Point II in conjunction with Point III, which also depends upon resolution of that issue.

7. In fairness to the jurors, we think that, as opposed to acting arbitrarily, they simply made a mistake as indicated in their affidavits. But, for the reasons explained below, we cannot take legal cognizance of the jurors' affidavits, and, considering (as we must) the verdict in the absence of those affidavits, it

indicates an arbitrary exercise of discretion in that it is grossly inadequate.

8. Counsel also stated that Crown did not dispute the repair cost to "some of the engines." But that reference is vague. In any case, the matters that Crown did clearly admit already exceed the amount the jury awarded.

9. Since Crown contested liability, the jury could have found that Crown was not negligent and that therefore Norfolk was not *entitled to recover* its damages. But the jury did not so find: they found Crown to be 24.4% at fault. Once that determination was made, the jury was required to find total damages in an amount consistent with the uncontested facts in the record. *Porter*, 375 S.W.2d at 212 ("Where a jury ... by its verdict has found

equate so as to indicate an arbitrary exercise of discretion. *Cf. Porter,* 375 S.W.2d at 214 (holding that a new trial on damages was not appropriate because the defendant's counsel had *not* judicially admitted damages in an amount exceeding the verdict).

A new trial may be granted as to damages alone (as opposed to a new trial on all issues) when (1) the issues of damages and liability are entirely separate and distinct; (2) the liability of the defendant is established; and (3) the defendant would not be prejudiced by limiting the new trial to damages. *Nance v. Kimbrow,* 476 S.W.2d 560, 562 (Mo.1972). Here, liability and damages were distinct: the main issues were whether Sehlke was negligent and whether Norfolk was negligent, and, although Crown disputed some of Norfolk's claimed damages, the dispute was not intertwined with the negligence of either party. The liability of Crown has been established, and there is nothing to suggest that Crown would be prejudiced by a new trial as to damages only, as opposed to a new trial as to all issues.[10]

Accordingly, the trial court erred in denying Norfolk's motion for a new trial as to damages only. Point granted in part.

## II. The inadmissibility of the juror affidavits vitiates Norfolk's claim that the trial court erred in denying its motion for additur and its motion to amend the judgment.

In Point II of its appeal, Norfolk argues that the trial court erred in failing to grant its motion for additur in that the juror affidavits, together with Crown's judicial admissions, demonstrate that the jury intended to find that Norfolk's total damages were $7,004,567.83. In Point III of its appeal, Norfolk argues that the trial court abused its discretion in denying Norfolk's motion to amend the judgment in that the juror affidavits, together with Crown's judicial admissions, demonstrate that the jury intended to find that Norfolk's total damages were $7,004,567.83. We disagree with both points.

Generally, juror affidavits may not be used to impeach the verdict, but they may be used to support or explain it. *Walton Constr. Co. v. MGM Masonry, Inc.,* 199 S.W.3d 799, 805 (Mo.App. W.D. 2006). If the verdict is unambiguous on its face and in light of the whole record, then juror affidavits are unnecessary and cannot be used to contradict the verdict. *Elmore v. Owens–Illinois, Inc.,* 673 S.W.2d 434, 439 (Mo. banc 1984) (holding that juror affidavits were properly excluded because there was nothing in the record establishing that the verdict was not the "true pronouncement" of the jury and there was nothing in the verdict itself that showed an ambiguity); *Lyon v. J.E. Dunn Constr. Co.,* 693 S.W.2d 169, 173 (Mo.App. W.D.1985) (holding that juror affidavits should not have been considered in conjunction with a motion to amend the judgment because there was nothing in the record itself to cast suspicion on the verdict). An ambiguity exists when the language to be interpreted is reasonably open to different constructions. *Dahmer v. Hutchison,* 315 S.W.3d 375, 377 (Mo.App. S.D.2010).

On its face, the verdict in this case is unambiguous. It states that "We, the undersigned jurors, find the total amount of plaintiff Norfolk Southern's damages *dis-*

---

liability it is bound to award plaintiff such damages, if any, as are commensurate with the nature and extent of the injuries incurred.").

10. Indeed, it seems likely that Crown would prefer the current distribution of liability, which has Norfolk responsible for 75.6% of the fault.

*regarding any fault on the part of the plaintiff* to be $1,709,114.55." (Emphasis added.) That language is not reasonably open to different interpretations: it means that the total amount of Norfolk's damages is $1,709,114.55. *See Lyon*, 693 S.W.2d at 173. For the reasons explained above, that finding is grossly inadequate, but a gross inadequacy is not the same thing as an ambiguity.

Norfolk argues that the fact that $1,709,114.55 (the jury's finding of total damages) is exactly 24.4% of $7,004,567.83 (one of the damage calculations that Norfolk submitted to the jury) renders the verdict ambiguous. But that is the exact situation that was present in *Lyon*, and, there, we found that no ambiguity existed and that therefore the jury foreperson's affidavit could not be considered. 693 S.W.2d at 172–73.

Norfolk argues that Crown's admissions (discussed above) further obscure the verdict's meaning, thus triggering the ability to consider the jurors' affidavits. *See El-more*, 673 S.W.2d at 439 ("In this case, there is no ambiguity in the verdict *and nothing in the record*, aside from the affidavits, that casts any suspicion on these verdicts."); *Jordan v. St. Joseph Ry., Light, Heat & Power Co.*, 335 Mo. 319, 73 S.W.2d 205, 210 (1934) (holding that juror affidavits were admissible to cure an ambiguity in the verdict and noting that " 'if . . . from the whole record, the meaning of the jury can be made clear and the judgment is based on what the jury actually found, it will be upheld' ") (quoting *Goff v. Hines*, 207 Mo.App. 420, 229 S.W. 221, 222

(1921)); *Hays v. Hogan*, 273 Mo. 1, 200 S.W. 286, 293 (1917) ("It is perfectly clear from the face of the entire record, that is, the petition, answer, evidence, verdict and affidavits filed, that through inadvertence the scrivener placed the punctuation point before instead of after the last two naughts found in the verdict."); *Lyon*, 693 S.W.2d at 173 ("[T]he amendment of a verdict [that] is ambiguous on its face or in light of the record is not considered a direct impeachment. . . .").

However, here, Crown's admissions do not create an ambiguity in the verdict because there is no way that the verdict can be read to reflect the amount admitted by Crown. Crown admitted a total of $3,242,809.30 in damages to Norfolk.[11] Since the verdict cannot be read to reflect *that* amount, the record itself does not create an ambiguity in this case. *See Dahmer*, 315 S.W.3d at 377 (noting the general principle that an ambiguity requires alternative reasonable interpretations). It is not reasonable to interpret the jury's verdict to mean that Norfolk incurred $3,242,809.30 in damages, and therefore the verdict is not ambiguous in light of Crown's admissions.

Since there is no ambiguity in the verdict, the jurors' affidavits cannot be considered in this case. Norfolk's motion for additur and its motion to amend the judgment both depended on the jurors' affidavits to establish the relief they sought—a judgment for $7,004,567.83 or, alternatively, an order of additur for that amount.[12] The trial court did not err in refusing to consider the jurors' affidavits, and, since

---

11. In its brief, Norfolk calculated the total amount admitted by Crown, and Crown did not dispute the calculations. We have discounted that calculation by the amount reflecting damages to "some of the engines" because that "admission" is insufficiently definite to constitute a judicial admission.

12. At oral argument, Norfolk asked for an amendment of the judgment or an order of additur in the amount admitted by Crown. That request was not presented to the trial court, however, and therefore we cannot overrule the trial court on that point. Rule 78.07(a).

the motion for additur and the motion to amend were dependent upon those affidavits, it follows that the court did not err in denying the motions. Point III is denied. Point II is denied in part.

## II. Norfolk's Motion for a New Trial based on the exclusion of expert testimony

Norfolk argues that the trial court erred in excluding expert testimony regarding whether Sehlke breached the appropriate standard of care in not calling 911. We disagree.

In order to be admissible, evidence must be both logically and legally relevant. *Moon v. Hy–Vee, Inc.*, 351 S.W.3d 279, 285 (Mo.App. W.D.2011). "Logically relevant evidence makes a fact of consequence to the outcome of the case more or less probable, or corroborates other relevant evidence." *Id.* To be legally relevant, evidence must have probative value that outweighs any danger of unfair prejudice, waste of time, undue delay, confusion of the issues, misleading of the jury, or presentation of needless, cumulative evidence. *Id.* Whether evidence is legally relevant is a matter entrusted to the sound discretion of the trial court. *Claus v. Intrigue Hotels, LLC*, 328 S.W.3d 777, 787 (Mo.App. W.D.2010).

Relying on *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011), Norfolk argues that we should apply de novo review to the trial court's decision to exclude testimony regarding whether Sehlke breached the standard of care in failing to call 911. But as we recently explained:

> While *Kivland* does hold that the review of the admissibility of expert testimony is de novo, that standard applies to the determination of whether the testimony constitutes *expert* testimony and whether that *expert* testimony should be ad-

mitted into trial under Section 490.065. Other factors pertaining to how that evidence relates to the trial as a whole, such as whether the testimony is legally relevant or cumulative, are considerations applicable to lay and expert testimony alike and remain subject to review under an abuse of discretion standard.

*Adkins v. Hontz*, 337 S.W.3d 711, 719 n. 6 (Mo.App. W.D.2011). There is no question that, under section 490.065, Norfolk's witness qualified as an expert. Rather, the issue is whether the testimony concerning Sehlke's failure to call 911 was legally relevant. As to that issue, we still apply an abuse of discretion standard. *Id.*

Here, the trial court excluded the 911 testimony because it is common knowledge that a person can call 911 in an emergency, and it was unnecessary for an expert to so testify. In other words, the trial court found that such testimony would waste time, would cause undue delay, and/or would be needless in light of the jurors' preexisting knowledge. Those matters speak to whether the evidence was legally relevant, *Moon*, 351 S.W.3d at 285, and, as such, the trial court's decision to exclude them is subject only to abuse of discretion review. *Adkins*, 337 S.W.3d at 719 n. 6. It does not shock the sense of justice or clearly go against the logic of the circumstances for the court to prevent an expert from testifying to a matter that is common knowledge.

Moreover, Norfolk cannot show that the trial court's ruling on this point prejudiced it. *See Thornton*, 62 S.W.3d at 585 (holding that a party appealing an evidentiary ruling must show that it was prejudiced). Another witness testified that, if Sehlke had called 911, the accident could have been averted, and Norfolk argued to the jury that Sehlke was negligent in not calling 911. Thus, Norfolk made its point

regarding Sehlke's failure to call 911, and it is speculative at best to argue that the expert's testimony would have led to a different result. Accordingly, Norfolk cannot show that it was prejudiced by the trial court's ruling. Point denied.

### III. Crown's Motion for a New Trial.

#### a. Evidence of 4 CSR 265–8.130

■ Crown argues that the trial court erred in excluding evidence of 4 CSR 265–8.130 and expert testimony regarding that regulation. We disagree.

■ Generally, "reading a statute to the jury is improper, and if[,] in reading the statute, counsel misstates the law or misleads the jury, it is reversible error." *Lasky v. Union Elec. Co.,* 936 S.W.2d 797, 802 (Mo. banc 1997); *Kline v. City of Kan. City,* 334 S.W.3d 632, 645 (Mo.App. W.D. 2011) (quoting *Lasky,* 936 S.W.2d at 802). " 'In Missouri, the jury is to obtain the law only from approved jury instructions.' " *Kline,* 334 S.W.3d at 645 (quoting *Eckelkamp v. Burlington N. Santa Fe Ry. Co.,* 298 S.W.3d 546, 552 (Mo.App. E.D.2009)). Nor should an expert be allowed to read a statute to the jury. *See Eckelkamp,* 298 S.W.3d at 550–51. However, in a negligence case, regulations may be relevant to establishing the appropriate standard of care, and the court may, within its discretion, allow a regulation to be read to the jury for that purpose. *Giddens v. Kan. City S. Ry. Co.,* 29 S.W.3d 813, 821 (Mo. banc 2000).

Here, the trial court did not abuse its discretion in preventing Crown's expert from reading excerpts from 4 CSR 265–8.130 to the jury. Crown sought to introduce two portions of the regulation: 4 CSR 265–8.130(1)(B) and 4 CSR 265–8.130(2)(A).

The trial court excluded evidence of the former subsection due to its potential to confuse the jury. Subsection (1)(B) states that "[i]t is *desirable* that the roadway surface be not more than three inches (3″) higher nor six inches (6″) lower than the top of the nearest rail at a point thirty feet (30′) from the rail, measured at a right angle, unless track superelevation dictates otherwise." (Emphasis added.) The trial court excluded evidence of 4 CSR 265–8.130(1)(B) on the ground that evidence of a regulation suggesting *desirable* standards would confuse the jury in that, if the jurors heard the terms of the regulation, they would think that compliance was *mandatory.* The court's reasoning does not shock the sense of justice, nor does it go against the logic of the circumstances so as to show a lack of thoughtful consideration. On the contrary, the trial court considered the matter thoughtfully and concluded that, though the regulation was otherwise admissible, it would be confusing to the jury to be told that a regulation existed but that compliance with it was desirable as opposed to mandatory. The trial court did not err in so ruling. *See Arrington v. Goodrich Quality Theaters, Inc.,* 266 S.W.3d 856, 864 (Mo.App. S.D. 2008) ("[C]onfusion of the issues is a recognizable ground for refusing to receive otherwise admissible evidence.").

The trial court excluded evidence of 4 CSR 265–8.130(2)(A) because Crown had not disclosed in discovery that its expert had formed an opinion with respect to Norfolk's lack of compliance with it. In relevant part, 4 CSR 265–8.130(2)(A) provides: "when a railroad corporation makes a track raise within a grade crossing, the runoff along the roadway shall be maintained at not more than two inches (2″) in the first ten feet." [13] However, the trial

13. We note that this regulation appears to be directed toward drainage and thus is arguably

court excluded any evidence tending to show that Norfolk failed to maintain the crossing in compliance with that regulation because, during discovery, Crown had not disclosed its intent to rely on it. A trial court does not err in excluding evidence based on unfair surprise. *Montgomery v. Wilson*, 331 S.W.3d 332, 341 n. 9 (Mo.App. W.D.2011).

Moreover, even if Crown had been permitted to introduce evidence tending to show that Norfolk had not complied with 4 CSR 265–8.130(2)(A), it would not have established that, had Norfolk complied with the regulation, the accident would have been averted. In its offer of proof, Crown simply asked its witness to read the regulation, and it introduced a diagram purporting to show that the crossing did not comply with the regulation. Absent evidence that the accident *would have been averted* had Norfolk complied with 4 CSR 265–8.130(2)(A)'s standards, Crown cannot establish that the result of trial would have been different had the jury been instructed on a duty based on that regulation. Given that Crown bears the burden to show prejudice, *McCullough*, 349 S.W.3d at 399, its arguments with respect to 4 CSR 265–8.130(2)(A) fail.

The trial court did not err in excluding evidence of 4 CSR 265–8.130. Subsection (1)(B) was potentially confusing to the jury, and Crown's reliance on subsection (2)(A) had not been disclosed in discovery. Accordingly, the trial court did not abuse its discretion in refusing to admit the regulation itself, nor did it err in refusing to allow Crown's expert to testify regarding it. Point denied.

**b. Crown's jury instructions**

 Crown argues that the trial court erred in denying its post-trial motion in that the court should have given Crown's

not even relevant.

proffered jury instructions relating to Norfolk's alleged failure to maintain the crossing at an appropriate grade. We disagree.

 "A jury instruction must be supported by substantial evidence which, if true, is probative and from which the jury can reasonably decide the case." *Holder v. Schenherr*, 55 S.W.3d 505, 507 (Mo.App. W.D.2001). When a rejected instruction was not a Missouri Approved Instruction, the appellant bears the burden to show that the trial court's failure to give the instruction materially affected the outcome of the trial. *McCullough*, 349 S.W.3d at 399. "A not-in-MAI instruction ... is reviewed to determine 'whether the jury [could] understand the instruction and whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict.'" *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 462 (Mo. banc 1998) (quoting *Brown v. Van Noy*, 879 S.W.2d 667, 672 (Mo.App. W.D.1994)).

A jury instruction must be based on the proper duty of care. *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 133 (Mo.App. W.D.2006). Here, underpinning each of Crown's jury instructions is their argument that Norfolk had a duty to maintain the crossing at a proper grade. But Crown did not cite the trial court to any law or facts that would establish what compliance with that duty would entail, and, as such, the trial court did not err in refusing the instruction. *See Seitz*, 959 S.W.2d at 462 (holding that a proper instruction must follow the applicable substantive law and must recite the appropriate ultimate facts to be found).

The only standard to establish a proper grade, properly cited and disclosed by Crown, was 4 CSR 265–8.130(1)(B), which, as explained above, did not impose a man-

datory duty on Norfolk. The trial court properly concluded that it would confuse the jury to submit an instruction when the only law supporting the instruction stated that its standards were "desirable." Desirable standards are not mandatory standards, and, since a jury instruction must be based on a recognized legal duty, the former cannot form the sole basis for a jury instruction. Thus, given that 4 CSR 265–8.130(1)(B) imposed no duty on Norfolk, and given further that Crown properly cited and disclosed no other law that would establish the proper standard for Norfolk to have complied with in maintaining the crossing's grade, the trial court did not err in refusing to instruct the jury regarding Norfolk's alleged failure to maintain a proper grade.

■■■ Crown also cites *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 238–41 (Mo. banc 2001), for the general proposition that a railroad has a duty to warn others of a dangerous railroad crossing. But an instruction based on *Alcorn* presupposes some evidence that the crossing was dangerous. *Id.* at 238. Crown's theory that the crossing was dangerous was based exclusively on the notion that Norfolk violated some duty in maintaining the crossing's grade. Crown's failure to establish that Norfolk violated any mandatory standard to maintain a proper grade therefore dooms its contention that Norfolk violated a duty to warn of a dangerous condition. Absent evidence of a dangerous condition, there can be no duty to warn of a dangerous condition. *See Maune ex rel. Maune v. City of Rolla*, 203 S.W.3d 802, 805 (Mo. App. S.D.2006). If Crown had submitted evidence showing that the crossing was dangerous, it would have been entitled to an instruction based on *Alcorn.* But it submitted no such evidence.

Accordingly, the trial court did not err in refusing to instruct the jury regarding Norfolk's failure to maintain the crossing's grade or its failure to warn that the crossing was dangerous. Point denied.

## Conclusion

The trial court erred in denying Norfolk a new trial as to damages only in that the verdict was grossly inadequate in light of the undisputed facts in the record. On remand, the issue will be confined to determining what Norfolk's total damages were. Crown judicially admitted that Norfolk was damaged in the amount of $3,242,809.30, and therefore the fact-finder must conclude that Norfolk was damaged in at least that amount. The most Norfolk ever asked for was $7,248,467.83, and therefore the fact-finder cannot conclude that Norfolk was damaged in an amount greater than that. The percentages of fault are no longer at issue: the jury found Norfolk to be 75.6% at fault and Crown to be 24.4% at fault, and those numbers cannot be affected by the new trial.

On all other points, the trial court did not err. Accordingly, the judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

CYNTHIA L. MARTIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.